**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**John E. SCALES, Defendant-Appellant.**

No. 78–5322.

United States Court of Appeals,
Sixth Circuit.

Argued Dec. 13, 1978.

Decided March 8, 1979.

Certiorari Denied May 14, 1979.
See 99 S.Ct. 2168.

Harold E. Wonnell, Columbus, Ohio, for defendant-appellant.

James C. Cissell, U. S. Atty., Cincinnati, Ohio, John W. Palmer, Mary Jane McFadden, Columbus, Ohio, for plaintiff-appellee.

Before LIVELY and KEITH, Circuit Judges, and TAYLOR,* District Judge.

ROBERT L. TAYLOR, District Judge.

John E. Scales has appealed his conviction on nine counts of unlawfully converting to his own use assets of Local 423 of the Laborer's International Union in violation of 29 U.S.C. § 501(c) and one count of conspiracy in violation of 18 U.S.C. § 371. He was acquitted on the six remaining counts, which included three charges under Section 501(c), two charges for conversion of funds from an employee insurance fund in violation of 18 U.S.C. § 664, and one charge of mail fraud in violation of 18 U.S.C. § 1341. He was given an aggregate sentence of ten years.

From 1968 through 1977, appellant was the business manager of Local 423 of the Laborer's International Union, a labor organization as that term is used in 29 U.S.C. §§ 401–531. Count I of the indictment charged him with conspiracy to embezzle and misapply the funds of Local 423 and the Ohio Laborer's District Council—Ohio Contractor's Association Insurance Fund. A number of overt acts were alleged in furtherance of the conspiracy including receiving double payments for expenses, receiving payment for expenses not incurred, using Local 423 funds for personal expenses of no benefit to the members of the Union and receiving interest free loans made for fraudulent purposes from union funds. All but one of the substantive counts upon which appellant was convicted were also charged as overt acts. Count XV involved similar self dealing with union funds.

At trial, the Government introduced 161 exhibits, consisting of thousands of pages of documents, and the testimony of eight co-conspirators who had previously pleaded guilty to conspiring with appellant to embezzle union funds. Seventeen other witnesses also testified, including FBI Agent Charles A. Tosi, who prepared Government's summary exhibit, Exhibit 145. The trial lasted eight days.

Appellant raises two question on appeal: One, whether the trial judge erred prejudicially in interrupting the testimony of a Government witness on cross-examination and inviting the Government to object; and Two, whether the trial judge erred prejudicially in admitting Government Exhibit 145 and in admitting the testimony of Special Agent Tosi of the FBI in connection with said exhibit.

### Testimony of Thomas Needham

Thomas Needham, Comptroller of the Laborer's International Union, testified on direct examination to the absence of official union business at various times and places in 1974–76, and also to the issuance of per diem expenses and payments for airfare from the International to appellant on the occasion of the September 1976 International Union convention in Miami, Florida. On cross-examination, he was asked if he were familiar with the practice in some local unions of paying a per diem in addition to funds paid by the International. He replied that he did not have "first-hand knowledge" of such a practice. Over the Government's objection, he was nevertheless permitted to testify that it was his understanding that the International did permit such a practice, if payments were reasonable, and that some local unions did in fact supplement expense payments from the International. At this point, the Court inquired further of the witness concerning his personal familiarity with the determination of the reasonableness of payments by the local unions. The witness answered that he had no contact with that determination. At this point, the following exchange occurred:

By Mr. Wonnell [appellant's counsel]

---

* The Honorable Robert L. Taylor, District Judge, United States District Court for the Eastern District of Tennessee, sitting by designation.

Q. Are you familiar with the procedure in some locals of giving a per diem without submission of an expense voucher or an expense account?

The Court: I am going to sustain an objection to that.

Mr. Palmer: The Government does so object, your Honor.

The Court: I will sustain the objection to that.

Appellant claims that the Court committed error in sustaining the objection, and suggested bias against appellant by intervening before an objection was made by the Government.

■ Although the Court agrees with appellant that the question posed was relevant,[1] the trial judge committed no error in ruling that the witness could not answer the question at issue. The witness had stated at the outset of cross-examination that he lacked personal knowledge of local union practices in regard to additional expense payments and was therefore not competent to answer the question.

■ Nor was there any error in the manner in which the trial judge sustained the Government's objection. A trial judge must not give an impression of partisanship on either side. *United States v. Ornstein*, 355 F.2d 222, 224 (6th Cir. 1966). That duty, however, does not require the trial judge to sit idly by while incompetent evidence is presented to the jury. *See United States v. Wright*, 542 F.2d 975, 978–979 (7th Cir. 1976), *cert. denied* 429 U.S. 1073, 97 S.Ct. 810, 50 L.Ed.2d 790 (1977).[2] The trial judge's action in this case did not contain any suggestion of bias against the appellant.

In addition to the foregoing, the court's action in inviting objection was particularly appropriate in this instance because the Government had objected moments earlier apparently on the basis of the witness' lack of personal knowledge of the subject matter. The court overruled the objection at that time. The trial judge may well have felt that the Government would not renew its objection in view of the court's earlier ruling. In such a case, a trial court would have to give some indication that an objection might be reconsidered before the Government could be expected to bring the matter up again.

## Government Exhibit 145 and Related Testimony

Appellant contends that the trial judge erred in allowing Government Exhibit 145 to be admitted into evidence as well as in permitting Special Agent Charles Tosi to testify concerning the exhibit. Appellant argues that the exhibit was inadmissible and prejudicial because it summarized the indictment and part of the Government's proof, thereby constituting conclusion and argument, and that Agent Tosi's testimony contained improper conclusions and argument.

Exhibit 145 consisted of a series of large charts. The first chart summarized all the charges contained in the indictment. Each of the remaining charts summarized a count or an overt act, or both, by reproducing, or making reference to, some of the documentary proof already in evidence. The only references in Exhibit 145 that were not to documents admitted previously into evidence were several statements in the charts that union records did not contain certain information. The charts were authenticated by Agent Tosi.

■ There was no prejudicial error committed by the admission of Exhibit 145. In regard to the summary of the indictment, the rule is clear that the trial judge has discretion to submit the indictment to

---

1. The Government argues, inter alia, that the question posed was irrelevant to the crimes charged because appellant was charged with receiving double airfare rather than double per diem. The Court notes that Counts X and XIV included an allegation of double payment of expenses as well as double payment of airfare.

2. *United States v. Wright*, 542 F.2d 975 (7th Cir. 1976), *cert. denied*, 429 U.S. 1073, 97 S.Ct. 810, 50 L.Ed.2d 790 (1977), was overruled by *United States v. Hollinger*, 553 F.2d 535 (7th Cir. 1977), on a different issue from that presented here.

the jury in a criminal case as long as limiting instructions are given to the effect that the indictment is not to be considered as evidence of the guilt of the accused. *See Garner v. United States,* 244 F.2d 575 (6th Cir. 1957), *cert. denied,* 355 U.S. 832, 78 S.Ct. 47, 2 L.Ed.2d 44; *United States v. Russo,* 480 F.2d 1228, 1244 (6th Cir. 1973), *cert. denied,* 414 U.S. 1157, 94 S.Ct. 915, 39 L.Ed.2d 109 (1974). Such a charge was given in this case. Indeed, the actual indictment was submitted to the jury in this case, and appellant raises no objection in that regard.

■ Nor can appellant claim that he was prejudiced by this chart because it was a summary rather than a copy of the full indictment. Not only was the Government's summary not inflammatory or prejudicially worded, the summary contained only enough description of the charges to remind the jury of the substance of each count. The trial judge carefully charged the jury as to all of the elements necessary for conviction on each count. The summary of the indictment clearly was intended to aid the jury in organizing the proof and no rights of appellant were prejudiced by its admission into evidence. *Cf. United States v. Swan,* 396 F.2d 883, 886–887 (2nd Cir. 1968), *cert. denied,* 393 U.S. 923, 89 S.Ct. 254, 21 L.Ed.2d 259.

The remainder of Exhibit 145 consisted of a summary of some of the objective proof relating to a number of the counts and overt acts charged. The Government argues that the exhibit was admissible under Fed.R.Evid. 1006, which provides as follows:

The contents of voluminous writings, recordings, or photographs which cannot conveniently be examined in court may be presented in the form of a chart, summary, or calculation. The originals, or duplicates, shall be made available for examination or copying, or both, by other parties at reasonable time and place. The court may order that they be produced in court.

■ Insofar as Exhibit 145 contained summaries of other exhibits in evidence, appellant contends that Rule 1006 does not apply because each document listed could have been, and was, examined at the time of its admission. There is no requirement in Rule 1006, however, that it be literally impossible to examine the underlying records before a summary or chart may be utilized. All that is required for the rule to apply is that the underlying "writings" be "voluminous" and that in-court examination not be convenient. With 161 exhibits, involving facts relevant to sixteen counts and twenty-one overt acts, comprehension of the exhibits would have been difficult, and certainly would have been inconvenient, without the charts utilized by the Government. *See United States v. Evans,* 572 F.2d 455 (5th Cir. 1978), *rehearing en banc denied,* 576 F.2d 931.

■ Exhibit 145 also contained written statements that union records did not contain certain information, primarily authorization for travel. Appellant argues that this information is not covered by Rule 1006 because this is information that records *do not* contain, and thus is not a summary of their contents as required by the rule.

Appellant admits that the underlying union records could have been introduced to prove the nonoccurrence of the relevant matters under Fed.R.Evid. 803(7). If the records themselves could have been admitted to show what their contents did not include, there appears to be no reason why Rule 1006 would not apply to a summary of their contents. It is true that in such an instance the content of the records is negative, but that does not render the fact of omission any less an accurate summary of the content of the records. The Court is strengthened in this conclusion by the similar view of 4 Wigmore, Evidence § 1230 (Chadbourn rev. 1972):

[T]estimony, by one who has examined records, that *no record* of a specific tenor is there contained is receivable instead of producing the entire mass for perusal in the courtroom.

(Emphasis in original)

It is to this section in Wigmore, though apparently to an earlier edition, that the

Advisory Committee referred in its explanatory note for Rule 1006. *See Rules of Evidence,* 56 F.R.D. 183, 345–346 (1972) (Advisory Committee's Note); *cf. United States v. Smyth,* 556 F.2d 1179, 1183 n. 9 (5th Cir. 1977), *rehearing en banc denied,* 557 F.2d 823, *cert. denied,* 434 U.S. 862, 98 S.Ct. 190, 54 L.Ed.2d 135.

■ Of course even under Rule 1006, the summary or chart must be accurate, authentic and properly introduced before it may be admitted in evidence. *See United States v. Denton,* 556 F.2d 811, 816 (6th Cir. 1977), *cert. denied,* 434 U.S. 892, 98 S.Ct. 269, 54 L.Ed.2d 178. In this regard appellant urges in general terms that Exhibit 145 is replete with characterizations and conclusions, and is deceptive. After a careful examination of Exhibit 145, the Court is unable to find any misleading or conclusory references. Exhibit 145 appears to present merely an organization of some of the undisputed objective evidence in terms of the relevant counts of the indictment.

■ Appellant also complains that the charts were too large and that the authenticating testimony was insufficient because Agent Tosi was not an expert. Size alone does not render inadmissible an exhibit containing otherwise unobjectionable objective evidence. *Cf. United States v. Nathan,* 536 F.2d 988, 992 n. 5 (2nd Cir. 1976), *cert. denied,* 429 U.S. 930, 97 S.Ct. 337, 50 L.Ed.2d 300. Given the nature of Exhibit 145, it is difficult to see how Agent Tosi's lack of expertise could have prejudiced appellant. The chart did not contain complicated calculations that would require an expert for accuracy. In order to authenticate Exhibit 145 it was necessary only that Agent Tosi had properly catalogued the exhibits previously admitted and had knowledge of the analysis of the union records referred to in the exhibit. Neither of these requirements necessitated any special expertise. As the one who supervised the compilation of Exhibit 145, Agent Tosi was the proper person to attest to the authenticity and accuracy of the chart. *See Weinstein's Evidence,* ¶ 1006[06].

■ Entirely aside from Rule 1006, there would still be ample authority for the admission of Exhibit 145 into evidence. There is an established tradition, both within this circuit and in other circuits, that permits a summary of evidence to be put before the jury with proper limiting instructions. *See e. g., Gariepy v. United States,* 189 F.2d 459 (6th Cir. 1951); *Epstein v. United States,* 246 F.2d 563 (6th Cir. 1957), *cert. denied,* 355 U.S. 868, 78 S.Ct. 116, 2 L.Ed.2d 74; *Barber v. United States,* 271 F.2d 265 (6th Cir. 1959); *United States v. Bartone,* 400 F.2d 459 (6th Cir. 1968), *cert. denied,* 393 U.S. 1027, 89 S.Ct. 631, 21 L.Ed.2d 571 (1969); *United States v. Rath,* 406 F.2d 757 (6th Cir. 1969), *cert. denied,* 394 U.S. 920, 89 S.Ct. 1196, 22 L.Ed.2d 453; *United States v. Lattus,* 512 F.2d 352 (6th Cir. 1975); *Carlson v. United States,* 187 F.2d 366 (10th Cir. 1951); *Gordon v. United States,* 438 F.2d 858 (5th Cir. 1971), *cert. denied,* 404 U.S. 828, 92 S.Ct. 63, 30 L.Ed.2d 56; *United States v. Downen,* 496 F.2d 314 (10th Cir. 1974), *cert. denied,* 419 U.S. 897, 95 S.Ct. 177, 42 L.Ed.2d 142; *United States v. Lawhon,* 499 F.2d 352 (5th Cir. 1974), *rehearing en banc denied,* 502 F.2d 1168, *cert. denied,* 419 U.S. 1121, 95 S.Ct. 804, 42 L.Ed.2d 820 (1975). These cases normally involve violations of income tax laws but there has never been any formal distinction between the use of summaries in that type of case and in other types of criminal cases. *Cf. United States v. Conlin,* 551 F.2d 534, 538 (2nd Cir. 1977), *cert. denied,* 434 U.S. 831, 98 S.Ct. 114, 54 L.Ed.2d '91, and *United States v. Jalbert,* 504 F.2d 892, 894 (1st Cir. 1974) (both citing *United States v. Gordon, supra,* a case involving misapplication of bank funds). Some cases allow the summary of purely testimonial evidence, *e. g., Epstein v. United States,* 246 F.2d at 570; *Barber v. United States, supra,* so strictly speaking, such summaries cannot be said to come within the requirements of Rule 1006. The purpose of the summaries in these cases is simply to aid the jury in its examination of the evidence already admitted. *See United States v. Downen, supra.* Authority for such summaries is not usually cited, but would certainly exist under Fed.

R.Evid. 611(a). *See Weinstein's Evidence* ¶ 1006[03].

■ The danger of permitting presentation of a summary of some of the evidence in a criminal case is plain. The jury might rely upon the alleged facts in the summary as if these facts had already been proved, cf. *United States v. Moody,* 339 F.2d 161 (6th Cir. 1964), *cert. denied,* 386 U.S. 1003, 87 S.Ct. 1347, 18 L.Ed.2d 432 (1967), or as a substitute for assessing the credibility of witnesses. *Cf. Steele v. United States,* 222 F.2d 628 (5th Cir. 1955), *cert. denied,* 355 U.S. 828, 78 S.Ct. 39, 2 L.Ed.2d 41 (1957), *rehearing denied,* 355 U.S. 875, 78 S.Ct. 115, 2 L.Ed.2d 79. This danger has led to the requirement of "guarding instructions" to the effect that the chart is not itself evidence but is only an aid in evaluating the evidence. *See Holland v. United States,* 348 U.S. 121, 128, 75 S.Ct. 127, 99 L.Ed. 150 (1954); *United States v. Bartone,* 400 F.2d at 461. Even with such instructions, a summary may still be considered as too conclusory or as emphasizing too much certain portions of the Government's case, or as presenting incompetent facts. *See United States v. Conlin, supra; United States v. Abbas,* 504 F.2d 123 (9th Cir. 1974), *cert. denied,* 421 U.S. 988, 95 S.Ct. 1990, 44 L.Ed.2d 477 (1975); *Elder v. United States,* 213 F.2d 876 (5th Cir. 1954), *cert. denied,* 348 U.S. 901, 75 S.Ct. 223, 99 L.Ed. 707, *rehearing denied* 348 U.S. 922, 75 S.Ct. 300, 99 L.Ed. 723 (1955). Trial courts may take care that such unfair summaries are not presented to juries.

Despite the danger, however, most summaries are routinely admitted. See cases, *supra.* In fact, not only are the summaries themselves admitted, but computations and evaluations are often permitted on the basis of such summaries. *E. g., Epstein v. United States, supra.*

■ In contrast to such extensive use, this appeal presents a very limited utilization of an evidence summary. The facts of the case were complex. Thus the summary was likely to have been very helpful to the jury. The facts summarized were entirely objective, and, for all that appears from this appeal, uncontested. No issue of credibility was presented. The exhibit was in no sense conclusory, but stated the facts shown in a neutral way. The facts summarized did not even directly undermine appellant's theory of the case. Finally, the trial judge did instruct the jury as to the limited purpose that such a summary could serve.[3]

■ Appellant's final argument is that the trial court improperly permitted Agent Tosi to deliver a closing argument during his authentication of the summary. Ultimately the trial court accepted appellant's objection and limited Agent Tosi's testimony. Because Exhibit 145 was essentially a presentation of objective material which aided the jury in remembering portions of the evidence and sorting out the charges, there was really no need for Agent Tosi to restate the portions of the evidence contained in Exhibit 145. Under these circumstances, it would perhaps have been preferable had the trial judge ruled from the start of Agent Tosi's testimony that Exhibit 145 was essentially self-explanatory. The Court need not decide this issue, however, because the early portion of Agent Tosi's testimony consisted of an accurate recounting of certain objective evidence already before the jury. No rights of appellant could have been prejudiced by such a recital.

---

**3.** Appellant has not specifically raised the issue of permitting such a summary to go to the jury during deliberations. As it appears that Exhibit 145 did accompany the jury, appellant's objection to this course may be viewed as implicit. It is certainly not unusual for such demonstrative evidence to go to the jury. *See United States v. Downen, supra; United States v. Goichman,* 407 F.Supp. 980 (E.D.Pa.1976), *aff'd* 547 F.2d 778. In most cases, however, once the summary is considered properly admitted, the issue of its going to the jury is not separately raised. It appears generally that when such summaries are kept from the jury, it is either because they were not properly offered into evidence, *cf. Gordon v. United States, supra,* or because the summary was considered unfair or unreliable for the reasons listed above. *See Steele v. United States, supra; cf. United States v. Abbas, supra.* For essentially the same reasons we rule that this exhibit was properly admitted, we conclude that no right of appellant was prejudiced by its submission to the jury.

For the foregoing reasons, the judgment of the trial court is affirmed.