CHARLES TASHJIAN, DECEASED, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Tashjian v. Commissioner
Docket No. 14910-81.
United States Tax Court
T.C. Memo 1988-566; 1988 Tax Ct. Memo LEXIS 595; 56 T.C.M. (CCH) 847; T.C.M. (RIA) 88566; December 14, 1988. Barry J. Laterman and Paul V. Colleran, for the respondent. RUWE
MEMORANDUM FINDINGS OF FACT AND *596 OPINION RUWE, Judge: Respondent determined deficiencies and additions to tax in petitioner's income taxes as follows: Additions to Tax
Year
Deficiency
Sec. 6653(b) [1]
1971
$ 22,833.79
$ 11,416.89
1972
7,037.64
3,518.82
1973
57,075.60
28,537.80
1974
19,898.83
9,949.42
The issues for decision are: (1) Whether petitioner had additional unreported income in the amounts of $ 89,510.04, $ 24,028.26, $124,483.70, and $ 52,122.40 during the taxable years 1971 through 1974, respectively; (2) whether petitioner is liable for the additions to tax for fraud under section 6653(b); and (3) whether respondent is barred by the statute of limitations, section 6501, from assessing deficiencies in income tax and additions to tax for the taxable years in issue. Petitioner and his wife, Mildred Tashjian, filed joint Federal income tax returns for the years in issue. Respondent determined that petitioner's wife is an innocent spouse *597 and accordingly, no deficiencies or additions to tax are being determined against Mrs. Tashjian. Procedural Background
On June 25, 1981, petitioner filed a timely petition contesting respondent's determination of deficiencies and additions to tax. Respondent, in his timely answer, denied the substantive allegations of the petition and further alleged that petitioner had filed his Federal income tax returns with fraudulent intent and that the underpayments of tax were due to fraud. Respondent also alleged that petitioner omitted in excess of 25 percent of reported gross income for 1974, bringing that year within the exception to the statute of limitations provided in section 6501(e)(1)(A). Petitioner thereafter filed a reply denying the affirmative allegations in respondent's answer. Petitioner died on August 7, 1985, leaving no estate. On March 12, 1987, petitioner's counsel withdrew from the case for the stated reason that he no longer had authority to act in the case. The only known heir at law is the surviving spouse, Mildred Tashjian. Subsequent to counsel's withdrawal, notice of all proceedings has been sent to Mrs. Tashjian. At trial, on March 21, 1988, no appearance *598 was made on behalf of petitioner. Respondent moved for a judgment of default. This motion was taken under advisement and the case proceeded to trial. On September 7, 1988, we denied respondent's motion. On December 12, 1988, we issued our opinion in Smith v. Commissioner, 91 T.C.    overruling Miller-Pocahontas Coal Co. v. Commissioner,21 B.T.A. 1360 (1931). In Smith we held that we may, in the exercise of our discretion, enter a default decision including the fraud addition without the necessity of requiring respondent to adduce evidence of fraud. Based on the entire record, including considerations stated when we denied respondent's motion for default, we find that our exercise of discretion in denying respondent's motion was appropriate. FINDINGS OF FACT Petitioner resided in Norwood, Massachusetts, when he filed his petition in this case. Petitioner filed Federal income tax returns for the taxable years 1966 and 1967, and petitioner and his wife filed joint returns for the taxable years 1968 through 1974. Petitioner reported gross and taxable income as follows: Year
Gross Income
Taxable Income
1966
$  4,275
$ 3,274
1967
14,100
6,944
1968
14,549
4,935
1969
31,886
7,764
1970
35,988
--  1971
21,777
205
1972
23,735
6,751
1973
26,760
7,449
1974
32,620
4,806
*599 Respondent mailed two separate notices of deficiency to petitioner by certified mail on April 1, 1981. One of the notices covered the years 1972 and 1973 and the other covered the years 1971 and 1974. Petitioner's income tax returns for the taxable years 1971 through 1974 were filed on the following dates: Year
Date Return Filed
1971
April 26, 1972
1972
April 15, 1973
1973
April 15, 1974
1975
April 15, 1975
Revenue Agent John Sullivan conducted an audit of petitioner's Federal income tax returns for the taxable years 1971 through 1974. Petitioner did not cooperate with Mr. Sullivan during the audit and, as a result, Mr. Sullivan utilized the net worth method to compute petitioner's income for taxable years 1971 through 1974. OPINION The first issue we must decide is whether the assessment of additional tax for the years in issue is barred by the statute of limitations. Assessment of the deficiencies determined for the years in issue is barred by the statute of limitations unless respondent establishes an exception. Sec. 6501(a). Respondent argues that the statute of limitations is open for all of the years in issue because petitioner's returns *600 were fraudulent. Sec. 6501(c)(1). Respondent has the burden of proving fraud by clear and convincing evidence. Sec. 7454(a); Rule 142(b); Stone v. Commissioner,56 T.C. 213, 220 (1971). His burden is met if he shows that the taxpayer intended to evade taxes known to be owing by conduct intended to conceal, mislead, or otherwise prevent the collection of taxes. Webb v. Commissioner,394 F.2d 366, 377-378 (5th Cir. 1968), affg. a Memorandum Opinion of this Court; Castillo v. Commissioner,84 T.C. 405, 408-409 (1985); Rowlee v. Commissioner,80 T.C. 1111, 1123 (1983). Fraud is an intentional wrongdoing motivated by a specific purpose to evade a tax known or believed to be owing. Akland v. Commissioner,767 F.2d 618, 621 (9th Cir. 1985), affg. a Memorandum Opinion of this Court. The existence of fraud is a question of fact to be resolved upon consideration of the entire record. Rowlee v. Commissioner, supra at 1123. *601 Fraud is never presumed. Beaver v. Commissioner,55 T.C. 85, 92 (1970). Fraud may, however, be proved by circumstantial evidence because direct proof of the taxpayer's intent is rarely available. Stephenson v. Commissioner,79 T.C. 995, 1005-1006 (1982), affd. 748 F.2d 331 (6th Cir. 1984). In this case, to prove fraud respondent must establish that petitioner understated his taxable income on his Federal income tax returns for the years in issue, and that the understatement was made with fraudulent intent. In the alternative, respondent claims that petitioner omitted gross income in excess of 25 percent of the amount shown on his 1974 return, and that the statute of limitations is still open pursuant to section 6501(e)(1) for the 1974 year. It is undisputed that the notice of deficiency was mailed more than three years after the filing of the 1974 return, therefore, respondent has the burden of providing evidence of the applicability of this exception to the normal three-year statute of limitations. Adler v. Commissioner,85 T.C. 535 (1985). Respondent utilized the "net worth method" to determine petitioner's *602 income during the years in issue. In order to make a prima facie net worth case, respondent must establish (1) an opening net worth to serve as a starting point from which to calculate future increases in petitioner's assets, (2) the amounts of increase in the net worth from year to year and, (3) that these increases were from a taxable source. See Holland v. United States,348 U.S. 121 (1954). [2]
Respondent's principal "evidence" of petitioner's net worth consisted of two summaries which respondent offered at trial, the admissibility of which the Court questioned at trial and reserved ruling upon. These summaries purport to show that petitioner's net worth increased substantially during the years in issue. The first summary is a Source and Application of Funds Analysis for the years 1964 through 1970 (hereinafter referred to as the Cash on Hand Summary), which was prepared under the direction of the examining agent, John Sullivan. Most of the underlying data upon which this schedule *603 was based was not offered by respondent as evidence, and it is impossible from the record to specifically characterize the nature of all of the underlying data. We are left to speculate about the extent to which the underlying data consists of copies of business records which could have been authenticated if the proper witness was available, as opposed to written memoranda and affidavits containing third party witnesses' statements or other documents which would not have been admissible to prove the truth of their contents, even if the originals had been offered. The summary itself, however, indicates that some of the items contained therein are based upon memoranda of interviews and affidavits of persons who did not appear as trial witnesses. The revenue agent who prepared this summary testified that he relied heavily upon the factual findings in the investigative report of Special Agent Gianoukos, dated January 24, 1968. Respondent offered the special agent's report as evidence. Aside from the hearsay nature of this report, we note that even the special agent's report indicates that it was based on a preliminary investigation and seems to acknowledge that the findings were not *604 conclusive. The report concluded by stating: It is recommended that this case be closed in the Intelligence Division and that this report be forwarded to the Audit Division. If during the course of future action by the Audit Division further indications of fraud are disclosed, we will be pleased to again consider the matter. Since this summary is the primary evidence respondent offered to prove opening cash on hand, its admissibility is critical to establishing petitioner's opening net worth. If respondent fails to establish opening net worth, he will be unable to make a prima facie net worth case. The second summary is a schedule purporting to show petitioner's beginning and ending net worth for each of the years in issue (hereinafter referred to as the Net Worth Summary). It is, in essence, the same Net Worth Summary contained in the notices of deficiency. The Net Worth Summary does not specifically identify any individual asset or liability; rather, it merely refers to general categories such as "Bank Accounts," "Land and IMprovements," "Mortgages Payable," "Loans Payable-Individuals," etc. Most of the underlying data upon which the Net Worth Summary is based was *605 not offered by respondent as evidence. Except for beginning cash on hand on January 1, 1971, neither the Net Worth Summary nor respondent's brief identify specific items of evidence upon which the Net Worth Summary is based. Again, we are left to speculate regarding the extent to which the asset and liability amounts are based on business records which could have been authenticated if the proper witness had been presented or upon items which would have been clearly inadmissible. The Net Worth Summary is the sine qua non of respondent's case. If it is inadmissible, respondent cannot meet his burden with respect to either exception to the statute of limitations on which he relies. Respondent argues that both summaries are admissible under rule 1006, Federal Rules of Evidence (FRE), which allows the contents of voluminous writings, recordings, or photographs to be presented in the form of a chart, summary, or calculation. Respondent's brief cites United States v. Scales,594 F.2d 558 (6th Cir. 1979), to support his position that the summaries are admissible. United States v. Scales, supra, *606 does not address the problem with which we are presented. That case dealt with the admissibility, pursuant to rule 1006, FRE, of a summary based primarily upon underlying documentary evidence that was already admitted into evidence. The party who appealed the admissibility of the summary in Scales conceded that the unadmitted documents supporting the summary were admissible and could have been introduced. The court described the summary as "appear[ing] to present merely an organization of some of the undisputed objective evidence in terms of the relevant counts of the indictment." United States v. Scales, supra at 563. The instant case is distinguishable from Scales in that most of the data and information supporting respondent's summaries was not offered as evidence, and there was no agreement that the underlying data was admissible evidence. A summary, based on data which itself has not been admitted into evidence, is admissible under rule 1006, FRE, if the proponent establishes that (1) the underlying documents upon which the summary is based are admissible *607 in evidence and (2) the underlying documents were made available to the opposing party for inspection. Hackett v. Housing Authority of City of San Antonio,750 F.2d 1308, 1312 (5th Cir. 1985); Paddack v. Dave Christensen, Inc.,745 F.2d 1254, 1259-1261 (9th Cir. 1984); United States v. Johnson,594 F.2d 1253, 1255 (9th Cir. 1979). See Ford Motor Co. v. Auto Supply Co.,661 F.2d 1171 (8th Cir. 1981). It is the responsibility of the proponent of a summary to demonstrate that the summary is based upon admissible evidence. A summary based partly on admissible evidence and partly on inadmissible evidence is itself inadmissible. Paddack v. Dave Christensen, Inc., supra at 1260-1261. At the trial of this case the Court reserved ruling on the admissibility of the summaries and explained to respondent's counsel its concerns regarding respondent's failure to demonstrate the admissibility of the data on which the summaries were based. Respondent made no attempt to introduce most of the underlying data nor did he offer the testimony of witnesses who might have properly authenticated the documentation *608 upon which the summaries were allegedly based. Respondent argues that the underlying information upon which the summaries were based was brought to the trial, and that an examination of the underlying data, by the Court, would have shown it to be admissible. Presumably, respondent would have the Court peruse what appeared to be hundreds of documents, including memoranda and affidavits, in order to determine the admissibility of each document underlying the summaries. To do this might have taken weeks of the Court's time, interrupted the trial, and would likely have resulted in rejection of the summaries in any event. For example, respondent appears to argue that much of the underlying data consists of bank records. However, respondent's counsel failed to specify which items are based on bank records. Given the descriptions of the assets and liabilities shown on the Net Worth Summary, we suspect that a significant amount of the underlying data does not consist of bank records. For example, the summary lists substantial amounts of assets and liabilities under titles such as "Loans Payable-Individuals," "Loans Receivable-Individuals," "Loans Payable-Corporations," and "Loans Receivable-Corporations. *609 " Neither the Net Worth Summary nor respondent's brief identifies these alleged debtors and creditors, and respondent did not attempt to inform the Court of the exact nature of the information on which he relies to establish these items. As previously noted, it appeared from the face of respondent's Cash on Hand Summary that portions of it were based on factual statements made by third-party witnesses who were not present at trial, and thus would have been inadmissible hearsay. The purpose of rule 1006, FRE, is to make the presentation of facts more convenient and meaningful to the court. See United States v. Clements,588 F.2d 1030, 1039 (5th Cir. 1979); United States v. Johnson, supra at 1255. We fail to see how this purpose could be served by accepting respondent's suggestion that the Court examine respondent's administrative files in order to scrutinize his summaries for accuracy and admissibility. Respondent's alternate position appears to be that the Court blindly accept his summaries. Acceptance of respondent's summaries without requiring him to establish admissibility of the underlying data would relieve him of his evidentiary burden. *610 The Net Worth Summary in this case is practically identical to that contained in the notices of deficiency. Based upon the foregoing, we find that neither of respondent's summaries is admissible into evidence. In light of our disposition of the admissibility of the summaries, we will refrain from discussing the admissibility of other evidence offered by respondent. [3] That evidence, were it admissible, provides no basis on which to conclude that petitioner understated his income during the years in issue. Respondent has not proved the amount of petitioner's opening net worth or that petitioner's net worth substantially increased during the years in issue. Respondent has failed to establish that any exceptions to the normal statute of limitations apply. Therefore, respondent is barred from assessing the deficiencies in issue. *611 Decision will be entered for the petitioner.
Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code, as amended and in effect during the taxable years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. See also Shelhorse v. Commissioner,T.C. Memo. 1980-98↩.
3. For example, respondent introduced three balance sheets through the revenue agent who testified that he obtained them from petitioner's accountant who had prepared them. With no explanation of the circumstances under which they were prepared, respondent argues that they are admissions by petitioner's agent in the scope of the agency. It is interesting that these balance sheets show that petitioner had a substantially greater net worth throughout the period in question than that shown in respondent's net worth summary and also show that petitioner's net worth was decreasing.↩