867 F.2d 611
 55 Fair Empl.Prac.Cas. 928
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Jay DUKE, Plaintiff-Appellant, Cross-Appellee,
v.
PFIZER, INC., a foreign corporation; United Division,
Pfizer Hospital Products Group, Inc., a foreign
corporation; Steve Weller; and Jerome
Mattioli, jointly and
severally,
Defendants-Appellees,
Pfizer, Inc., a foreign corporation; United Division,
Pfizer Hospital Products Group, Inc., a foreign
corporation; and Jerome Mattioli,
Defendants-Appellees, Cross-Appellants.
 Nos. 87-1976, 87-2032.
 United States Court of Appeals, Sixth Circuit.
 Jan. 26, 1989.
 
 Before RYAN and ALAN E. NORRIS, Circuit Judges, and LIVELY, Senior Circuit Judge.*
 ALAN E. NORRIS, Circuit Judge.
 
 
 1
 Jay Duke, a former sales representative of Pfizer, Inc., appeals from a judgment against him entered upon a jury verdict in his diversity action against Pfizer and Jerome Mattioli. The jury found against Duke on the four issues submitted by the court: (1) a claim of racial discrimination in violation of 42 U.S.C. Sec. 1981 (1981), and the Michigan Elliott-Larsen Civil Rights Act, Mich.Comp.Laws Secs. of the encounter was that, after he told Duke that it was important that he better understand simple sales concepts and that there were "no magic words," Duke grabbed him by the shirt. Duke, however, testified that Weller, who had directed racial slurs at him earlier in the day and at the restaurant, worked himself into a frenzy and grabbed Duke's tie and lapels. The testimony of two restaurant employees was consistent with Weller's testimony. Duke also said that, after they left the restaurant, Weller punched him in the stomach.
 
 
 2
 Immediately after the two separated, Weller contacted John Hamilton, Pfizer's national sales manager, and gave his version of events. Hamilton testified that he then called Duke, who admitted that he had "lost control" and physically went after his boss. Hamilton told Duke he would have to leave the company. Duke did not then inform Hamilton that Weller had made racial remarks and attacked him.
 
 
 3
 Pfizer employed Mattioli to investigate the incident. After the investigation was completed, the president of Pfizer decided to terminate Duke because he concluded that Duke had lied about the events in an attempt to shift the blame to Weller.
 
 
 4
 Duke raises ten issues.
 
 
 5
 I. TOUSSAINT EMPLOYMENT CONTRACT--BURDEN OF PROOF
 
 
 6
 Relying upon Rasch v. City of East Jordan, 141 Mich.App. 336, 367 N.W.2d 856 (1985), Duke contends that the trial court erred in instructing the jury that, with respect to his Toussaint contract claim, "[p]laintiff has the burden of proving by a preponderance of evidence ... that defendants had no just cause for discharging him." Duke further contends that he provided the court with proper instructions, which the court failed to give.
 
 
 7
 Nevertheless, Duke was not prejudiced by the district court's ruling. In pleading intentional infliction of emotional distress, he relied upon the same evidence that the jury rejected in determining that he had failed to establish claims under either 42 U.S.C. Sec. 1981 or the Elliott-Larsen Act. Since the jury determined that Duke had failed to prove that he was the victim of racial slurs and discrimination, there is no basis for concluding that the jury could have found the additional element of intent to inflict emotional distress, even had the trial court given the proper instruction.
 
 III. SEQUESTRATION ORDER
 
 8
 Duke argues, pursuant to Fed.R.Evid. 615, that Charles Gamble, President of the United Division of Pfizer Hospital Products Group, should not have been permitted to testify because he had been provided, in violation of the court's sequestration order, with a copy of the transcript of the testimony of a previous defense witness. The court ruled that Gamble could not testify with respect to matters in the first forty-three pages of the transcript, which he admitted reading.
 
 
 9
 Duke contends that Gamble should not have been permitted to testify with respect to any matters covered in the witness' testimony, but made no effort at the trial, or on this appeal, to show that Gamble's testimony was in fact influenced by the witness' testimony.
 
 
 10
 We are unable to say that the district judge was required to adopt as broad a corrective sanction as urged by Duke. See United States v. Brooks, 303 F.2d 851, 853 (6th Cir.), cert. denied, 371 U.S. 889 (1962). The purpose of sequestration is to prevent witnesses from tailoring testimony to that of other witnesses, and to aid in detecting false testimony. Violation of a sequestration order does not automatically disqualify a witness. Duke's sales performance for each year of his employment with the average sales performance of the company's entire sales force and were said by the witness to summarize voluminous exhibits on sales performance which were already in evidence. Since Duke has not demonstrated that the graphs are unreliable, inaccurate, unfair, or misleading, we are unable to say that they were erroneously admitted pursuant to Fed.R.Evid. 1006. See United States v. Scales, 594 F.2d 558 (6th Cir.), cert. denied, 441 U.S. 946 (1979).
 
 VI. INSTRUCTION ON DIRECT EVIDENCE
 
 11
 Duke's argument, that the court should have instructed the jury that racial slurs are direct evidence of discrimination, is unsupported by authority which would require a trial judge to adopt such a proposed instruction as a correct statement of the law of this circuit. In addition, such an instruction could appear to a juror to accord to Duke's evidence a more dispositive effect than was warranted, since the alleged slurs were not delivered by a decisionmaker and therefore could be characterized only as indirect evidence from which one could infer that the employer discriminated against plaintiff on the basis of his race.
 
 VII. MENTAL EXAMINATION OF WITNESSES
 
 12
 By the same token, the assertion, that two defense witnesses should have been ordered to submit to mental examinations, pursuant to Duke's motion under Fed.R.Civ.P. 35, is without merit, as the rule specifically applies only to parties.
 
 
 13
 VIII. MOTION FOR JUDGMENT N.O.V.
 
 
 14
 Duke contends that the trial court should have granted judgment to him notwithstanding the verdict since, even viewing the evidence in a light most favorable to Pfizer, the evidence points so strongly in his favor that pattern of acts that had recurred frequently within the limitation period and that were intended to provoke Duke into an action for which he could be terminated. Sumner, 427 Mich. at 539, 398 N.W.2d at 383.
 
 X. DISQUALIFICATION OF TRIAL JUDGE
 
 15
 Finally, Duke argues that he should have been granted a new trial since the trial judge failed to disqualify himself. Duke says he learned after the trial that, some years before, when a complaint had been filed concerning the judge's conduct, he had been represented by two lawyers from the same law firm that represented Pfizer and Mattioli during this trial. The representation terminated more than two years prior to trial. In his opinion denying the motion for new trial, the district judge pointed out that lawyers from that same firm had also been involved in pursuing the complaint against him.
 
 
 16
 Duke contends that the applicable statute required the district judge to disqualify himself, sua sponte:
 
 
 17
 Disqualification of justice, judge, or magistrate
 
 
 18
 (a) Any justice, judge, or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.
 
 
 19
 (b) He shall also disqualify himself in the following circumstances:
 
 
 20
 (1) Where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding[.]
 
 
 21
 28 U.S.C. Sec. 455(a), (b)(1) (Supp.1988).
 
 
 22
 In his attempt to demonstrate actual bias in support of disqualification under 28 U.S.C. Sec. 455(b)(1), Duke relies upon much of the conduct by the trial judge which we have pointed out above does not amount to error in presiding over the trial. Accordingly, we would be hard-pressed to a judgment should be vacated pursuant to Fed.R.Civ.P. 60(b), for a violation of 28 U.S.C. Sec. 455. In Liljeberg, close scrutiny was undoubtedly warranted, since the case had been tried to the court. The judgment in this case, by contrast, was the product of a trial to a jury. Furthermore, as noted above, the trial judge in this case did not violate 28 U.S.C. Sec. 455.
 
 
 23
 However, even if 28 U.S.C. Sec. 455(a) had been violated, utilization of the harmless error analysis set out in Liljeberg would still result in our affirmance of the denial of Duke's motion for a new trial. According to the Supreme Court, "it is appropriate to consider the risk of injustice to the parties in the particular case, the risk that the denial of relief will produce injustice in other cases, and the risk of undermining the public's confidence in the judicial process." Liljeberg, 100 L.Ed.2d at 875.
 
 
 24
 In this case, it is clear that, in view of the absence of actual bias or the appearance of bias in the conduct of the trial, the weight of the evidence against Duke, and the expense to Pfizer in defending this case, great injustice would result to Pfizer if this case were to be retried, with little likelihood that there would be a different result.
 
 
 25
 Second, since it cannot be said that the facts upon which Duke claims the trial judge should be disqualified are remarkable, by allowing the judgment to stand we will not be encouraging judges in future cases to ignore grounds for disqualification. And, finally, denying relief will not undermine the public's confidence in the judicial process, since a reasonable member of the public, knowing and weighing all the relevant facts, would conclude that Duke was fairly dealt with by the judicial process. In fact, such a person would be offended if we were to subject the judicial process to the expense and inconvenience of a new trial.
 
 
 
 *
 The Honorable Pierce Lively became Senior Circuit Judge on January 1, 1989