**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————

**No. 11-4687**

———————

UNITED STATES OF AMERICA,

        Plaintiff - Appellee,

    v.

NIKOLAOS MAMALIS,

        Defendant – Appellant,

    and

BALTIMORE CITY POLICE DEPARTMENT,

        Respondent.

———————

Appeal from the United States District Court for the District of Maryland, at Baltimore. Benson Everett Legg, District Judge. (1:09-cr-00608-BEL-1)

———————

Argued: September 19, 2012       Decided: November 30, 2012

———————

Before KEENAN and FLOYD, Circuit Judges, and Timothy M. CAIN, United States District Judge for the District of South Carolina, sitting by designation.

———————

Affirmed by unpublished opinion. Judge Cain wrote the opinion, in which Judge Keenan and Judge Floyd joined.

———————

**ARGUED:** William Lawrence Welch, III, Baltimore, Maryland, for Appellant. Debra Lynn Dwyer, OFFICE OF THE UNITED STATES ATTORNEY, Baltimore, Maryland, for Appellee. **ON BRIEF:** Rod J.

Rosenstein, United States Attorney, Jeffrey W. Peyton, Law
Clerk, OFFICE OF THE UNITED STATES ATTORNEY, Baltimore,
Maryland, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit.

CAIN, District Judge:

A jury convicted Nikolaos Mamalis (Mamalis) of various federal offenses arising out of a series of armed robberies committed between July and November 2009. Mamalis was sentenced to a total of seventy-seven years' imprisonment. On appeal, Mamalis challenges his convictions and sentences on several grounds, including the improper admission of evidence, the failure of the district court to instruct the jury on the definition of reasonable doubt, and violation of the Double Jeopardy Clause. For the reasons below, we affirm.

I.

Between July and November 2009, Mamalis, along with co-defendants Daniel Chase (Chase), Evangelos Tsoukatos (Tsoukatos), Antowan Bell (Bell), George Laloudakis (Laloudakis), and Pedro Garcia (Garcia), planned and committed three armed robberies. In all three robberies, Mamalis knew the victims, assisted with the planning of the robberies and surveillance of the victims, and coordinated the other defendants' actions via a cell phone during the robberies.

First, on July 29, 2009, after planning and coordinating via prepaid cell phones, Mamalis, Chase, and Garcia robbed Precision Vending, a private business in Baltimore, Maryland. Mamalis knew the store's owner and the physical layout of the

location. Once the owner was alone in the building, Chase and Garcia impersonated delivery men, gained access to the store, brandished a firearm, and stole over $10,000.

Second, on September 2, 2009, Mamalis, Chase, and Laloudakis robbed the home of the owner of Citizens Pharmacy Services, another of Mamalis's acquaintances. Chase and Laloudakis impersonated law enforcement investigators, gained access to the gated community and then the home, brandished a firearm at the owner and his wife, and absconded with jewelry and cash.

Finally, on September 29, 2009, Mamalis, Laloudakis, Tsoukatos, and Chase robbed the home of the owner of Sparrow's Point Restaurant, yet another of Mamalis's acquaintances. This time, Chase impersonated an investigator with the Baltimore County State's Attorney Office, gained access to the home, brandished a firearm at the owner and restrained him, allowing the defendants to steal over $110,000.

During the investigation of the robberies, five pen register orders were issued between August 31 and November 7, 2009. Additionally, a wiretap authorization order was issued on November 5, 2009. Through the wiretap interceptions, law enforcement learned that Mamalis and Chase intended to commit another robbery in Atlantic City.

4

On November 8, 2009, state and federal investigators began surveillance of Mamalis and Bell in Baltimore and followed them to Atlantic City. On November 9, 2009, Chase met up with Mamalis and Bell in Atlantic City, where law enforcement arrested the three defendants. Officials searched Chase's vehicle in conjunction with his arrest and discovered mace, rope, rubber gloves, handcuffs, empty money bags, a knife, tape, and a fake law enforcement identification.

Pursuant to a search warrant, officials then searched Mamalis's hotel room and recovered a cell phone, hotel receipts, a wallet, Bell's driver's permit, a sock containing jewelry, and other items. Subsequently, law enforcement obtained another search warrant to search Mamalis's residence. From this search, officials recovered a firearm and a firearm box.

II.

Mamalis filed several motions to suppress tangible evidence, wiretap evidence, and various statements. After a suppression hearing, the district court denied these motions.

Following a jury trial, Mamalis was convicted of three counts of Hobbs Act robbery, in violation of 18 U.S.C. § 1951 (2006), one count of conspiracy to commit Hobbs Act robbery, in violation of 18 U.S.C. § 1951, and three counts of using and carrying a firearm during and in relation to a crime of

violence, in violation of 18 U.S.C. § 924(c)(2006). The district court sentenced Mamalis to twenty (20) years to run concurrently for the conspiracy to commit a Hobbs Act robbery (Count One) and the three Hobbs Act robberies (Counts Two, Four, and Six); seven (7) years to run consecutively for using a firearm in relation to the conspiracy in Count One and the Hobbs Act robbery in Count Two (Count Three); twenty-five (25) years to run consecutively for using a firearm in relation to the conspiracy in Count One and the Hobbs Act robbery in Count Four (Count Five); and twenty-five (25) years to run consecutively for using a firearm in relation to the conspiracy in Count One and the Hobbs Act robbery in Count Six (Count Seven). Accordingly, the district court sentenced Mamalis to a total of seventy-seven (77) years.

III.

A.

Mamalis argues that the evidence obtained through use of the pen registers was inadmissible because (1) the warrants were invalid; and (2) the orders authorized use of the pen registers "without geographical limits," in violation of 18 U.S.C. § 3123. We disagree.

Under federal law, an application for an order authorizing the use and installation of a pen register must include the name

6

of the attorney making the application, the "identity of the law enforcement agency conducting the investigation," and "a certification by the applicant that the information likely to be obtained is relevant to an ongoing criminal investigation being conducted by that agency." 18 U.S.C. § 3122. Moreover, an order authorizing the installation and use of a pen register must specify:

> (A) the identity, if known, of the person to whom is leased or in whose name is listed the telephone line or other facility to which the pen register or trap and trace device is to be attached or applied;
>
> (B) the identity, if known, of the person who is the subject of the criminal investigation;
>
> (C) the attributes of the communications to which the order applies, including the number or other identifier and, if known, the location of the telephone line or other facility to which the pen register or trap and trace device is to be attached or applied, and, in the case of an order authorizing installation and use of a trap and trace device under subsection (a)(2), the geographic limits of the order; and".
>
> (D) a statement of the offense to which the information likely to be obtained by the pen register or trap and trace device relates . . .

18 U.S.C. § 3123(b)(1). Maryland law is substantially similar. See Md. Code. Ann., Cts. & Jud. Proc. § 10-4B-03 (West 1988).

1.

"We review the factual findings underlying a motion to suppress for clear error and the district court's legal determinations de novo." United States v. Hamlin, 319 F.3d 666,

7

671 (4th Cir. 2003)(citing United States v. Rusher, 966 F.2d 868, 873 (4th Cir. 1992)). On appeal, we also review the evidence in a light most favorable to the government when a motion to suppress has been denied. Id. (citing United States v. Seidman, 156 F.3d 524, 547 (4th Cir. 1998)).

2.

First, Mamalis argues that the orders authorizing the use of pen registers were invalid because the judges' signatures were inconsistent and the detectives' signatures were missing from the warrant applications.

The government had initially given Mamalis copies of the applications and orders without the detectives' signatures. However, after Mamalis moved to suppress, the government delivered copies of the applications and orders displaying both the detective and judges' signatures. Mamalis contends that the supplemental disclosures raised additional questions about the validity of the pen register warrants, because the judges' signatures in the supplemental discovery appeared different from the signatures for the same judges in the original discovery.

The district court held a two-day suppression hearing. At the hearing, the two detectives who sought the pen register warrants testified as to the usual procedure used in obtaining pen register warrants from the Circuit Court of Baltimore City, which included a process designed to prevent copies of the

8

judges' true signatures from circulating in public. Further, the detectives testified that they routinely did not sign the applications and orders until they were in the presence of the judge and only after having been sworn in. The detectives testified that they followed this process every time they sought a pen register warrant.

The district court denied the motion to suppress, finding that the detectives' testimony established that the pen register orders were signed by the judges in their presence and the signatures appeared different due to the process designed to prevent the circulation of the judges' true signatures. We find no error in the district court's denial of the motion to suppress as to this issue.[1]

Mamalis also argues that the state court pen register orders were invalid because they were "without geographical limits." However, while four of the pen register court orders use the language "without geographical limits," the orders also clearly establish that the pen registers are to be "installed

---

[1] We also note that there is a letter in the Supplemental Joint Appendix from Circuit Court Judge John Addison Howard dated the day after the district court filed its order denying Mamalis' motion to suppress in which Judge Howard certifies that his signature is on four of the applications and orders. (Supp. J.A. 3).

9

and used within the jurisdiction of [the state] Court."[2]  We hold that this language provides that the geographical limits of the pen registers were coterminous with the geographical jurisdiction of the issuing state courts, and therefore were not without geographical limits.

Finally, Mamalis contends that the pen register orders were invalid because they failed to state who was the subject of the investigation.  Section 3123(b)(1)(B) requires only that the subject be stated, if known.  Four of the five pen register orders stated that the subject was unknown and the fifth one stated Mamalis was the subject of the investigation.  In his brief, Mamalis states in one sentence that the pen registers fail to name the subject of the investigation.  He did not raise this issue below, and further he does not provide any argument pertaining to this issue on appeal.  See Fed.R.App.P. 28(a)(9)(A)("[Appellant's] argument . . . must contain . . . appellant's contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies.").  Therefore, we find Mamalis has waived this issue on appeal.  Wahi v. Charleston Area Med. Ctr., Inc., 562 F.3d 599, 607 (4th Cir. 2009)(holding that a single declarative

---

[2] The fifth pen register order, issued August 31, 2009, does not mention geographical limits.

10

sentence, without citations to authorities or the record, is insufficient to raise an argument on appeal).

B.

Mamalis then argues that the district court improperly admitted evidence obtained through the wiretaps because (1) the warrants were not valid under 18 U.S.C. § 2518 and (2) the government failed to issue reports to the Administrative Office of the United States Courts (AO) in accordance with 18 U.S.C. § 2519. We disagree.

On November 5, 2009, an order authorizing the interception of wire and electronic communications on two telephone numbers was issued by a judge for the Circuit Court of Baltimore County, pursuant to an affidavit and application submitted by a Baltimore Police detective. The order required the government to file progress reports with the court every seven days, with the first report due on November 10, 2009. Mamalis was arrested on November 9, 2009.

As stated above, we review the "factual findings underlying a motion to suppress for clear error and the district court's legal determinations de novo." Hamlin, 319 F.3d at 671 (citing Rusher, 966 F.2d at 873). On appeal, this court also reviews the evidence in a light most favorable to the government when a motion to suppress has been denied. Id. (citing Seidman, 156 F.3d at 547).

11

1.

Mamalis argues that the wiretaps were invalid because the warrants did not comply with 18 U.S.C. § 2518. Specifically, he contends that the warrants failed to comply with § 2518(1)(b) and (c), as they failed to set forth a full and complete statement regarding the facts and whether investigative procedures had been tried and failed.[3] Mamalis also argues that the warrant violated § 2518(4)(b) because the November 5, 2009 wiretap order lists a phone number inconsistent with the phone number listed in the application and affidavit. Finally, Mamalis argues that the warrants are invalid because the government failed to report its progress to the judge as required by § 2518(6).

Pursuant to § 2518(b) and (c), an application for an order authorizing a wiretap must include "a full and complete statement of the facts and circumstances relied upon by the applicant, to justify his belief that an order should be issued," and "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous." 18 U.S.C. § 2518(b),(c). Additionally,

---

[3] Although Mamalis mentions that the warrants also violate § 2518(1)(e), because he makes no argument in furtherance of that contention, that argument is deemed abandoned.

12

pursuant to § 2518(4), an order authorizing wiretapping must specify "the identity of the person, if known, whose communications are to be intercepted" and "the nature and location of the communications facilities as to which, or the place where, authority to intercept is granted."  18 U.S.C. § 2518 (4)(a),(b).

2.

First, Mamalis argues that the information obtained via the wiretap was obtained in violation of federal law because the application for the wiretap did not include a "full and complete statement of the facts and circumstances relied upon by the applicant" as required by § 2518(1)(b).  Specifically, he argues that the affiants stated that they did not "include[]details of every aspect of this investigation to date."  However, the affiants also explicitly stated that "[f]acts not set forth herein are not being relied on in reaching the conclusion that orders should be issued."  Therefore, we find that the affidavit does not violate § 2518(1)(b) and the district court did not err in denying Mamalis's motion to suppress on this ground.

Next, Mamalis argues that the wiretap authorization was improper because the applicant failed to include a "full and complete statement as to whether or not investigative procedures have been tried and failed," in violation of § 2518(1)(c).  He argues that the applicant merely "summarize[d] various types of

13

investigative techniques." We find this contention to be without merit.

Findings of necessity by the issuing court are reviewed for abuse of discretion. United States v. Wilson, 484 F.3d 267, 280 (4th Cir. 2007). Furthermore, the burden on the government to show that it exhausted other investigative techniques prior to applying for wiretap authorization is not great. United States v. Smith, 31 F.3d 1294, 1297 (4th Cir. 1994). In essence, the government must show that wiretapping the phones in conjunction with the investigation is reasonable. Id. at 1298.

Here, the affidavit detailed at length the extent to which other investigative techniques were tried and failed or were unlikely to succeed. Moreover, the affidavit explained how the wiretaps were necessary to gather evidence about Mamalis and his cohorts and their operation and to establish their locations. Indeed, the government listed no fewer than seventeen separate paragraphs in the affidavit justifying the use of wiretaps. The affidavit clearly demonstrated that the government had exhausted other investigative techniques and that wiretapping was necessary and reasonable. Accordingly, we hold that the district court did not abuse its discretion in finding that the government complied with its burden.

Mamalis also contends that the November 5, 2009 wiretap order warrant violated § 2518(4)(b) because it lists a different

14

phone number from the phone number referred to in the application and affidavit.[4] However, this was merely a typographical error which was corrected in a subsequent order. Accordingly, we find no error.

Finally, Mamalis argues that the prosecution violated § 2518(6), because it did not file a progress report with the judge who issued the order. Pursuant to § 2518(6), an order authorizing interception "may require reports to be made to the judge who issued the order showing what progress has been made toward achievement of the authorized objective and the need for continued interception." 18 U.S.C. § 2518(6). Here, however, prior to the due date of the first progress report, Mamalis and the other defendants had been arrested, making a report unnecessary, as continued interception was no longer needed. Therefore, we hold that the district court properly refused to suppress the evidence on this ground.

3.

Additionally, Mamalis argues that the district court erred in admitting the wiretap evidence because the government failed to submit a report to the AO, as required by 18 U.S.C. § 2519. The government contends that it complied in March 2010.

---

[4] Specifically, Mamalis alleges that the application and affidavit sought interception for a phone number ending in "2232," while the wriretap order authorized an interception for a phone number ending in "2322."

15

Regardless, even if the report was not properly made, Mamalis presents no authority suggesting that suppression is the proper remedy for failing to comply with this requirement.

Section 2518(10)(a)provides that evidence may be suppressed when "the communication was unlawfully intercepted," "the order of authorization or approval under which it was intercepted is insufficient on its face," or "the interception was not made in conformity with the order of authorization or approval." Failure to submit a report to the AO falls under none of those conditions. Accordingly, we hold that the district court properly admitted the evidence obtained by the wiretaps.

C.

Mamalis contends that tangible evidence obtained through the search of his hotel room and residence was improperly admitted because the affidavits used to establish probable cause for the warrants contained evidence improperly obtained from the pen registers and wiretaps. He argues that the searches violated the Fourth Amendment and the evidence obtained constitutes fruit of the poisonous tree. See U.S. Const. amend. IV ("The right of the people to be secure in their persons . . . against unreasonable searches and seizures, shall not be violated . . . .").

As stated above, we review factual findings underlying the denial of a motion to suppress for clear error and legal

16

determinations de novo.  Hamlin, 319 F.3d at 671.  Further, when a motion to suppress has been denied, we review the evidence in the light most favorable to the government.  Id.

Mamalis's contention is without merit.  As explained above, the pen registers and wiretaps were lawful.  Therefore, the evidence was properly admitted. Moreover, even if the evidence was obtained improperly, the investigating agents reasonably relied on the issuance of the warrants for Mamalis's hotel room and home.  See United States v. Leon, 468 U.S. 897, 923, 927 (1984) (Blackmun, J., concurring) (summarizing the Court's holing as: "[E]vidence obtained in violation of the Fourth Amendment by officers acting in objectively reasonable reliance on a search warrant issued by a neutral and detached magistrate need not be excluded, as a matter of federal law").  Therefore, the district court did not err in admitting this evidence.

D.

Next, Mamalis argues that the district court abused its discretion in admitting summary charts showing the defendants' cell phone usage *vis-a-vis* their physical locations during the robberies.  He argues that admission during the evidence portion of the trial was improper because the summary charts contained arguments and were not simply summaries of records.

17

1.

We review a district court's evidentiary rulings for abuse of discretion. United States v. Kelly, 510 F.3d 433, 436 (4th Cir. 2007) (citing United States v. Young, 248 F.3d 260, 266 (4th Cir. 2001)).

In the Fourth Circuit, we apply a two-part test to determine if summary charts were properly admitted. "First, we determine whether the charts aided the jury in ascertaining the truth." United States v. Johnson, 54 F.3d 1150, 1159 (4th Cir. 1995)(citing United States v. Pinto, 850 F.2d 927, 935 (2d Cir. 1988); United States v. Scales, 594 F.2d 558, 563 (6th Cir. 1979)). Second, "we consider the possible prejudice that would result to the defendant by allowing the summary chart into evidence." Id. To determine whether the charts aided the jury in ascertaining the truth, we consider "the length of the trial, the complexity of the case, and the accompanying confusion that a large number of witnesses and exhibits may generate for the jury." Id. Additionally, to reduce the potential of unfair prejudice, the district court may (1) make both the person who prepared the charts and the evidence they used to prepare them available for cross-examination, and (2) properly instruct the jury as to how it may consider the charts. Id.

2.

Here, in light of the length, complexity, and nature of the case, the summary charts clearly aided the jury in ascertaining the truth. The trial was seven days long and involved twenty-three witnesses. See generally United States v. Loayza, 107 F.3d 257 (4th Cir. 1997) (permitting admission of summary charts in a three-day trial for mail fraud that included testimony from thirteen government witnesses); Johnson, 54 F.3d 1150 (permitting admission of summary charts in a seven-day trial that included testimony from thirty witnesses). Furthermore, the trial involved a number of co-defendants, numerous cell phones, pen registers and wiretaps authorized for various phones, and three violent robberies. These factors increased the complexity of the issues before the jury, and the summary charts enabled the jurors to untangle the intricate facts of the case. Undeniably, the summary charts aided the jury in ascertaining the truth.

Nor did Mamalis suffer any unfair prejudice by the district court's admission of the charts. In fact, the district court took a number of steps to protect Mamalis from any potential prejudice, including granting Mamalis pre-trial access to the charts and the underlying information used to prepare them and issuing a curative instruction to the jury prior to their introduction. Finally, the district court permitted Mamalis's

19

counsel to cross-examine the detective who introduced the summary charts. Accordingly, we hold that the district court did not abuse its discretion when it admitted the summary charts into evidence.

E.

Mamalis argues that the district court abused its discretion when it declined his request to give a jury instruction defining reasonable doubt. We hold that this claim has no merit.

A district court's determinations regarding jury instructions are reviewed for abuse of discretion. United States v. Stotts, 113 F.3d 493, 496 (4th Cir. 1997); United States v. Russell, 971 F.2d 1098, 1107 (4th Cir. 1992).

As Mamalis concedes, our precedent establishes that the district court need not define reasonable doubt for the jury, even when such an instruction is requested by the jury. See United States v. Walton, 207 F.3d 694, 696-97 (4th Cir. 2000) (en banc) ("[T]he well-established rule of this Circuit is that although the district court may define reasonable doubt to a jury upon request, the district court is not required to do so."); United States v. Moss, 756 F.2d 329, 333 (4th Cir. 1985). Mamalis asks us to overrule decisions by previous panels. However, we decline to do so, as that is something only the en banc court of appeals or the Supreme Court of the United States

20

may do.  See United States v. Guglielmi, 819 F.2d 451, 457 (4th Cir. 1987).  Under controlling precedent, the district court was not required to define reasonable doubt, and thus we hold that the district court did not abuse its discretion.

F.

Mamalis contends that his sentence violates 18 U.S.C. § 924(c) because his convictions were part of an ongoing criminal scheme, rather than second or subsequent convictions.  The court reviews legal issues de novo.  United States v. Davenport, 445 F.3d 366, 370 (4th Cir. 2006), abrogated by Irizarry v. United States, 553 U.S. 708 (2008).

Section 924(c) states, in pertinent part,

[A]ny person who, during and in relation to any crime of violence or drug trafficking crime . . . uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime . . . be sentenced to a term of imprisonment of not less than 5 years.

. . . .

*In the case of a second or subsequent conviction under this subsection, the person shall be sentenced to a term of imprisonment of not less than 25 years....*

18 U.S.C. § 924(c)(emphasis added).  As Mamalis recognizes, however, his claim is foreclosed by the holding in United States v. Deal, 508 U.S. 129 (1993).  In Deal, the Supreme Court held that any § 924(c) conviction subsequent to an initial § 924(c) conviction, whether the offenses took place in separate

21

incidents or not, qualifies as a second or subsequent conviction under § 924(c).  Id. at 135.  Accordingly, we conclude that the district court imposed proper sentences.

G.

Finally, Mamalis argues that his sentence violates the Double Jeopardy Clause because the indictment referenced the conspiracy count in each of the three § 924(c) firearms charges. See U.S. Const. amend. V ("No person shall . . . be subject for the same offence to be twice put in jeopardy of life or limb . . . ."). The court finds this claim to be meritless.

In the indictment, Counts Three, Five, and Seven constitute charges for separate firearms convictions stemming from each of the three separate robberies in violation of § 924(c). Each of the § 924(c) counts referenced the conspiracy charge and the relevant Hobbs Act robbery charge as the predicate offenses. Therefore, a plain reading of the indictment establishes that each § 924(c) charge was alleged based upon distinct actions in separate robberies. Furthermore, pursuant to Deal, 508 U.S. 129, it is clear that Mamalis's sentences do not violate the Double Jeopardy Clause.

IV.

Based on the foregoing, Mamalis's convictions and sentences are

AFFIRMED.