OPINION
{¶ 1} The appellant, Paul Edwards, appeals the December 15, 2003 judgment of the Common Pleas Court of Marion County, Ohio, sentencing him to four years of imprisonment as a result of his convictions on twenty-eight counts.
 {¶ 2} The facts relevant to this appeal are as follows. Between July, 1999, and May, 2000, Edwards sold promissory notes in a company called ADDMAC Entertainment, Inc. ("ADDMAC") to various individuals. When selling these notes, Edwards made certain representations to the investors, including that the notes would pay a guaranteed return of 10.9% in nine months and that they were fully insured so that the investors would not lose any of their principal. However, each investor lost 100% of their investment as none of the notes were insured.
 {¶ 3} As a result, Edwards was indicted by the grand jury on January 30, 2003, for twenty-seven securities violations: nine counts of unlicensed sales in violation of R.C. 1707.44(A)(1); nine counts of making false representations in the sale of securities in violation of R.C. 1707.44(B)(4); and nine counts of selling unregistered securities in violation of R.C.1707.44(C)(1). Each of these counts constituted a third degree felony. In addition, Edwards was indicted for one count of engaging in a pattern of corrupt activity in violation of R.C.2923.32, a felony of the first degree. Edwards pled not guilty to each of the twenty-eight counts in the indictment, and the case proceeded to a six-day jury trial on September 15-19 and September 22, 2003. At the conclusion of the trial, the jury found Edwards guilty on each of the twenty-eight counts. The trial court then sentenced him to one year for each of the twenty-seven securities related convictions, to be served concurrently with one another, and to three years for the corrupt activity conviction, to be served consecutively to the one year terms, for a total of four years in prison. This appeal followed, and Edwards now asserts three assignments of error.
The trial court erred in overruling defendant-appellant'smotion for acquittal, as the state failed to prove venue.
 The trial court erred in admitting into evidence state'sexhibit 30a because it was a summary containing substantialerrors.
 The state committed prosecutorial misconduct by preparing andproffering an exhibit that it knew to be faulty.
 First Assignment of Error
 {¶ 4} Edwards asserts in his first assignment of error that the trial court improperly overruled his motion for acquittal because the prosecution failed to prove venue in Marion County, Ohio. More specifically, he maintains that the State failed to present any evidence that the offenses charged in the indictment occurred in Marion County, Ohio. For the reasons that follow, we disagree.
 {¶ 5} Criminal Rule 29(A) provides that a court must order the entry of a judgment of acquittal of a charged offense "if the evidence is insufficient to sustain a conviction of such offense[.]" However, "a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proven beyond a reasonable doubt."State v. Bridgeman (1978), 55 Ohio St.2d 261, syllabus. TheBridgeman standard "must be viewed in light of the sufficiency of evidence test put forth in State v. Jenks (1991),61 Ohio St.3d 259, paragraph two of the syllabus." State v. Foster
(Sept. 17, 1997), 3rd Dist. No. 13-97-09, 1997 WL 576353. InJenks, the Ohio Supreme Court held that "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." Jenks, supra.
 {¶ 6} The defendant may move the court for acquittal "after the evidence on either side is closed." Crim.R. 29(A). When a defendant moves for acquittal at the close of the state's evidence and that motion is denied, the defendant "waives any error which might have occurred in overruling the motion by proceeding to introduce evidence in his or her defense." Statev. Brown (1993), 90 Ohio App.3d 674, 685 (citation omitted). In order to preserve a sufficiency of the evidence challenge on appeal once a defendant elects to present evidence on his behalf, the defendant must renew his Crim.R. 29 motion at the close of all the evidence. Id., citing Helmick v. Republic-Franklin Ins.Co. (1988), 39 Ohio St.3d 71, paragraph one of the syllabus; see, also, City of Dayton v. Rogers (1979), 60 Ohio St.2d 162,163, overruled on other grounds by State v. Lazzaro (1996),76 Ohio St.3d 261, syllabus; State v. McElroy (Mar. 1, 2001), 3rd Dist. No. 2-2000-29, unreported, 2001 WL 201085.
 {¶ 7} A review of the record reveals that Edwards made his Crim.R. 29 motion at the close of the State's case, proceeded to present evidence on his behalf, and then failed to renew his motion for acquittal at the conclusion of all of the evidence. Thus, he has waived all but plain error. In order to find plain error, Crim.R. 52(B) requires that there be a deviation from a legal rule, that the error be an "obvious" defect in the trial proceedings, and that the error affect a defendant's "substantial rights." State v. Barnes (2002), 94 Ohio St.3d 21, 27. Plain error is to be used "with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." Id.
 {¶ 8} Although venue is not a material element of an offense, the Ohio Supreme Court has held that "venue is a fact which must be proved in criminal prosecutions unless it is waived by the defendant." State v. Headley (1983), 6 Ohio St.3d 475, 477, citing State v. Draggo (1981), 65 Ohio St.2d 88, 90. The Court has further ruled that venue need not be proven in express terms but may be established by all the facts and circumstances.Headley, 6 Ohio St.3d at 477; see, also, State v. Gribble
(1970), 24 Ohio St.2d 85, paragraph two of the syllabus.
 {¶ 9} The Revised Code provides that "[t]he trial of a criminal case in this state shall be held in a court having jurisdiction of the subject matter, and in the territory of which the offense or any element of the offense was committed." R.C.2901.12(A). In addition, "[w]hen an offender, as part of a course of criminal conduct, commits offenses in different jurisdictions, the offender may be tried for all of those offenses in any jurisdiction in which one of those offenses or any element of one of those offenses occurred." R.C. 2901.12(H). In determining what constitutes a course of criminal conduct, the Revised Code states,
any of the following is prima-facie evidence of a course ofcriminal conduct:
* * *
(2) The offenses were committed by the offender in theoffender's same employment, or capacity, or relationship toanother.
 (3) The offenses were committed as part of the sametransaction or chain of events, or in furtherance of the samepurpose or objective.
* * *
(5) The offenses involved the same or a similar modusoperandi.
* * *
R.C. 2901.12(H).
 {¶ 10} Here, Edwards was charged with twenty-seven securities related offenses and one count of engaging in a pattern of corrupt activity. Pursuant to R.C. 2901.12, any of the offenses could be tried in Marion County if any one of their elements was committed in Marion County. In addition, if these offenses were committed as part of a course of criminal conduct, all could be tried in any jurisdiction where any element of any of the offenses occurred. Thus, in order to try all twenty-eight counts in Marion County, the State of Ohio had to demonstrate that these offenses were part of a course of criminal conduct and that at least one element of any one these offenses occurred in Marion County, Ohio.
 {¶ 11} Nine of the securities counts alleged that Edwards violated R.C. 1707.44(A)(1). This section prohibits a person from selling "securities in this state without being licensed pursuant to section 1707.16 of the Revised Code." Thus, in order to convict Edwards of these offenses, the State had to prove that Edwards did the following: (1) sold (2) securities (3) in Ohio (4) without being licensed in accordance with R.C. 1707.16.
 {¶ 12} The evidence at trial revealed that Edwards sold promissory notes, which are included in the definition of a security provided in R.C. 1707.01(B), in a company called ADDMAC Entertainment to numerous individuals in Ohio, during the year 2000, although he was not licensed to do so after December, 1999. Thus, the State satisfied its burden as to these elements. However, in order to establish venue, the State also had to show where these offenses or any element thereof occurred.
 {¶ 13} During the trial, Faye Murphy, the named victim in Counts 4, 5, and 6, testified that she lived at "383 Wheeler Drive, Marion." In addition, Murphy identified State's Exhibit 2A as being a letter sent to her by Edwards, which offered her the opportunity to invest in ADDMAC promissory notes and informed her that the notes were insured. This letter, dated January 5, 2000, was addressed to
Mr Mrs Murphy383 Wheeler DrMarion, OH 43302
This letter also included the following letterhead:
Edwards Financial Services478 UHLER AVENUE MARION, OH, 43302Phone 383-1235 or 1-888-681-4452
Murphy testified that she also met with Edwards at her home to purchase the ADDMAC promissory notes and that Edwards had her sign State's Exhibit 2E, entitled "Noteholder Suitability Form," which also included the Wheeler Drive address.
 {¶ 14} Each of the other named victims in the indictment had similar documents. Although the State did not submit a letter written to each victim by Edwards with his Marion, Ohio letterhead, the State did introduce a "Noteholder Suitability Form" from each victim named in the indictment and each of these contained the respective victim's address. These exhibits showed the following cities of residence for each victim: Peggy Asch, the victim in Counts 1-3, Marion, Ohio; Faye Murphy, the victim in Counts 4-6, Marion, Ohio; Sam Harvey, the victim in Counts 7-9, Cardington, Ohio; Dwight Custer, the victim in Counts 10-12, Marion, Ohio; Joyce Cumston, the victim in counts 13-15, Waldo, Ohio; Doril Vanscoy, the victim in Counts 16-21, Marion, Ohio; and Dorothy Gast, the victim in Counts 22-27, Radnor, Ohio. In addition, many of these victims testified that Edwards came to their home to sell these notes. Various victims also identified copies of checks written by them with their respective addresses indicated on these checks and testified that they gave these checks to Edwards in order to purchase the notes. Notably, each of the aforementioned documents was admitted into evidence with no objection.
 {¶ 15} Evidence Rule 201 permits a court to take judicial notice of a fact if it is "not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Evid.R. 201(B). As noted by the Fourth District Court of Appeals, "[l]ocation, as well as other geographical facts, are often times the subject of judicial notice because they are generally known within the territorial jurisdiction of the court and are not subject to reasonable dispute." State v. Gray (Feb. 19, 1998), 4th Dist. No. 97CA2284, unreported, 1998 WL 103325.
 {¶ 16} In the case sub judice, the prosecutor requested that the court take judicial notice of the counties in which these offenses occurred in response to Edwards' motion for acquittal based on venue. The court took the matter under advisement, and the following morning, the court reviewed portions of the transcript of the testimony of Faye Murphy and Doril Vanscoy, both of whom testified that they lived in Marion, Ohio, and that Edwards came to their home to sell notes to them. The court also reviewed portions of the testimony of Sam Harvey. Although Harvey testified that he lived in Cardington, Ohio, which is not located in Marion County, he testified that he became involved in the purchase of ADDMAC notes when Edwards sent letters to his home and came by his office at Sears in Marion. The court then found that venue had been sufficiently established.
 {¶ 17} Although the court did not specifically state that it was taking judicial notice of the fact that the City of Marion is located in Marion County, it implicitly took judicial notice of this fact for the purposes of determining the motion for acquittal, as evidenced by its denial of Edwards' motion. Given the aforementioned facts and circumstances, the court was well within its province to take judicial notice that many of these offenses, in whole or in part, were committed in Marion County. In fact, Marion, Ohio, where many victims lived and from where Edwards' letterhead indicated he sent letters of solicitation, and Waldo, Ohio, where another victim lived and was sold ADDMAC notes, are wholly located within Marion County, both geographical facts with which the trial court would be aware given its territorial jurisdiction. These facts are also capable of accurate and ready determination by unquestionable sources.
 {¶ 18} Furthermore, there was sufficient evidence to establish that these offenses were committed as part of a course of criminal conduct. Specifically, the evidence demonstrated that Edwards sold these notes under the supervision of Vern Shiflett, who operated Midwest Diversified Resource Group, Inc. ("MDR"), in exchange for a commission, which established that the offenses were committed under Edwards' same employment and/or capacity with MDR. See R.C. 2901.12(H)(2). The evidence also demonstrated that these offenses were conducted in furtherance of the same purpose, i.e. to sell ADDMAC notes for monetary gain. See R.C.2901.12(H)(3). In addition, the evidence showed that the offenses involved the same or a similar modus operandi, i.e. letters and/or in-person solicitation by Edwards, whereby potential investors were informed about ADDMAC's operations, that the notes had a 10.9% return in nine months, and that they were fully insured. See R.C. 2901.12(H)(5). Thus, venue was proper in any jurisdiction in which one or any element of one of these twenty-seven offenses occurred.
 {¶ 19} Moreover, the evidence showed that these notes were not registered, a violation of R.C. 1707.44(C)(1), that they were sold by Edwards although he was not licensed to do so, a violation of R.C. 1707.44(A)(1), and that he made false representations that these notes were fully insured, a violation of R.C. 1707.44(B)(4). The commission of these offenses was the basis for the final count of the indictment: engaging in a pattern of corrupt activity, which requires two or more incidents of corrupt activity, such as making false representations in the sale of securities in violation of R.C. 1707.44(B)(4). See R.C.2923.31(E), (I)(2)(a); R.C. 2923.32. Therefore, these offenses were inextricably linked together.
 {¶ 20} In sum, venue was proper in Marion County pursuant to both R.C. 2901.12(A) and (H). Accordingly, all twenty-eight counts could be properly tried in any jurisdiction in which any element of one of the offenses occurred, which included Marion. Therefore, no error, plain or otherwise, occurred in the denial of Edwards' motion for acquittal, and the first assignment of error is overruled.
Second Assignment of Error
 {¶ 21} In his second assignment of error, Edwards contends that the trial court erred in admitting Exhibit 30A, a summary of checks and deposit items received by Edwards with a total amount calculated at the end of the summary. Although Edwards concedes that the Rules of Evidence permit the admission of a summary of voluminous writings, he maintains that the court erred in allowing the State's summary in this case because it was inaccurate and prejudicial. More specifically, Edwards asserts that the summary indicated he received a check for $25,000.00 but that this check was actually written for $2,500.00 and that the prosecution included the higher amount despite the fact that it knew that the lower amount was correct. He also asserts that the summary was inaccurate because it showed a check for $33,685.00, which was included in the total amount received by Edwards at the end of the summary, and a credit for that same amount a few days later, which was not reflected in the total.
 {¶ 22} This Court's analysis of this issue begins by noting that "the decision of whether or not to admit evidence rests in the sound discretion of the [trial] court[.]" Wightman v.Consolidated Rail Corp. (1999), 86 Ohio St.3d 431, 437, citingPeters v. Ohio State Lottery Comm. (1992), 63 Ohio St.3d 296,299; see, also, State v. Sage (1987), 31 Ohio St.3d 173, 182. Thus, this Court will not disturb the trial court's decision unless it is unreasonable, arbitrary, or capricious. In addition, this abuse of discretion must have materially prejudiced the defendant. State v. Lowe (1994), 69 Ohio St.3d 527, 532, citingState v. Maurer (1984), 15 Ohio St.3d 239, 265.
 {¶ 23} The Rules of Evidence state that "[c]ontents of voluminous writings, recordings, or photographs which cannot conveniently be examined in court may be presented in the form of a chart, summary, or calculation." Evid.R. 1006. Edwards maintains that the information contained in the summary must be accurate and nonprejudicial. In support of this argument, Edwards relies upon a case from the Sixth Circuit Court of Appeals interpreting analogous Rule 1006 of the Federal Rules of Evidence. See Gomez v. Great Lakes Steel Div., Nat'l. SteelCorp. (1986), 803 F.2d 250, 257.
 {¶ 24} In Gomez, the court held that "[c]ontents of charts or summaries admitted as evidence under Rule 1006 must fairly represent and be taken from underlying documentary proof which is too voluminous for convenient in-court examination, and they must be accurate and nonprejudicial." Id., citing United States v.Scales (1979), 594 F.2d 558, 561-63, cert. denied,441 U.S. 946; 5 J. Weinstein and M. Berger, Weinstein's Evidence, ¶ 1006[1]-[07] (1986). However, the court further noted that "[s]uch summaries or charts admitted as evidence under Rule 1006 are to be distinguished from summaries or charts used as pedagogical devices which organize or aid the jury's examination of testimony or documents which are themselves admitted into evidence. Gomez, 803 F.2d at 257, citing Scales,594 F.2d at 563-64; J. Weinstein and M. Berger, supra, at ¶ 1006[07]. The reason the court provided for this distinction is that "[s]uch pedagogical devices `are more akin to argument than evidence. * * *'" Gomez, 803 F.2d at 257, citing J. Weinstein and M. Berger, supra, at ¶ 1006 [07].
 {¶ 25} In this case, the summary was admitted into evidence, but the underlying documents used in comprising the summary, i.e. the checks, were also admitted into evidence. Thus, the jury was not provided with merely a summary without the ability to independently ascertain the accuracy of the information contained therein nor was the summary used solely as a pedagogical device. Therefore, the rationale of Gomez and Scales is not entirely applicable nor is it binding authority for this Court. Additionally, the Tenth District Court of Appeals of Ohio has determined that when reviewing inaccuracies contained in a Rule 1006 summary, "the issue as to the accuracy of the figures bears upon the weight to be given the exhibits rather than upon their admissibility." B.T. Lazarus Co. v. Alma Marketing, Inc.
(June 13, 1991), 10th Dist. No. 89AP-1350, unreported, 1991 WL 115817.
 {¶ 26} In examining this summary, we conclude that the while the summary was not entirely accurate because it contained the wrong amount of $25,000.00 rather than $2,500.00, the trial court did not abuse its discretion in admitting it because Edwards suffered no prejudice by its admission. To the contrary, the inaccuracy contained in the summary was actually beneficial to the defense. During cross-examination, the State's witness, Robert Lang, an attorney with the Ohio Division of Securities who investigated Edwards and prepared the summary, admitted that $25,000.00 was an inaccurate figure, an admission that defense counsel was able to fully exploit, including having Lang admit that his original summary indicated the correct amount of the check, which was $2,500.00, a $22,500.00 error.
 {¶ 27} He further admitted that he changed the dollar figure on the Friday prior to the trial at the request of the prosecutor, who informed him that the check was for $25,000.00. In actuality, $25,000.00 was the numerical figure written in the box of the check. However, upon further examination, the written amount of the check was for $2,500.00, which was written on the payment line of the check. Lang further conceded that he did not fully examine the check to determine the correct amount. Thus, the defense was able to use this to bring the witness' credibility into question.
 {¶ 28} As for the check for $33,685.00, this check amount was accurate, and the credit for this same amount a few days later was also reflected in the summary. Thus, Edwards suffered no prejudice because the jury was aware that there was a check written for this amount as well as a credit. Further, the fact that there was a credit for the identical amount of this check does not negate the fact that Edwards received a check from ADDMAC/MDR for $33,685.00, which was the purpose of the exhibit. The relevance of the credit was properly left for the jury to make its own determination. In addition, any error in including this amount in the total without including the credit was not prejudicial to Edwards as his counsel was able to fully address this issue during cross-examination and even had Lang recalculate the total dollar figure using the credit of $33,685.00 and the correct amount of $2,500.00 to show the jury that Edwards' monetary gain was not as high as the summary reflected.
 {¶ 29} Finally, the summary was used as a means of establishing the existence of a criminal enterprise, one of the necessary elements of the offense of engaging in a pattern of corrupt activity. See R.C. 2923.32. The summary of the checks not only included dollar figures but also the account name and number on which these checks were drawn. This information showed payments to Edwards from MDR and ADDMAC, which demonstrated the criminal enterprise. Thus, while the dollar figures further demonstrated the existence of the criminal enterprise and Edwards' motive for engaging therein, the amounts, alone, were not outcome determinative of this or any other issue. Furthermore, the State had other evidence, i.e. copies of the actual checks, to demonstrate these amounts and to establish the elements of the twenty-eight counts, thus rendering the summary cumulative. In addition, the State offered to correct the summary to reflect the inaccuracy but Edwards rejected this offer. Given all of these facts, the trial court did not abuse its discretion in admitting this exhibit, and the second assignment of error is overruled.
Third Assignment of Error
 {¶ 30} In his final assignment of error, Edwards maintains that the State of Ohio engaged in prosecutorial misconduct, resulting in a denial of his right to a fair trial. Edwards bases this assertion upon the fact that the prosecutor prepared Exhibit 30A, the summary discussed in the second assignment of error, knowing that it contained false information.
 {¶ 31} Initially, we note that Edwards failed to make a motion for a mistrial based upon the alleged misconduct of the prosecutor. When "a criminal defendant does not move the court for a mistrial during the proceedings below, this Court will disregard claimed error related to prosecutorial misconduct unless the court's failure to order a mistrial, sua sponte, amounted to plain error." State v. Woods (Apr. 9, 1984), 12th Dist. No. CA83-06-053, unreported, 1984 WL 3302; see, also, State v. Dixon, 152 Ohio App.3d 760, 2003-Ohio-2550, ¶26. As previously noted, plain error requires a deviation from a legal rule and that the error was an "obvious" defect in the trial proceedings, which affected the defendant's "substantial rights." Barnes, 94 Ohio St.3d at 27.
 {¶ 32} When examining a question of prosecutorial misconduct, the Ohio Supreme Court has held that a reviewing court "must determine (1) whether the prosecutor's conduct was improper and (2) if so, whether it prejudicially affected [the defendant's] substantial rights." State v. LaMar, 95 Ohio St.3d 181,2002-Ohio-2128, ¶ 82, citing State v. Smith (1984),14 Ohio St.3d 13, 14. As noted by the Court, "`there can be no such thing as an error-free, perfect trial, and * * * the Constitution does not guarantee such a trial.'" State v. Lundgren (1995),73 Ohio St.3d 474, 487, quoting United States v. Hasting (1983),461 U.S. 499, 508-509. Rather, "[t]he touchstone of this analysis `is the fairness of the trial, not the culpability of the prosecutor.'" LaMar, 2002-Ohio-2128, at ¶ 82, quoting Smith v.Phillips (1982), 455 U.S. 209, 219 (emphasis added).
 {¶ 33} After reviewing the facts and circumstances in the case sub judice, we do not find that Edwards was denied a fair trial due to the inaccuracies contained in Exhibit 30A. This case involved many victims, who collectively lost nearly $400,000.00 by "investing" in ADDMAC. The prosecution submitted several exhibits (Exhibit 30, alone, contained sub-parts A through PP), with an array of monetary amounts that differed from victim to victim, of which this check was one of many. In addition to the documents submitted, Lang testified on re-direct examination that his office had forty storage-size boxes of information obtained during this investigation. Thus, the documents involved in this case were numerous. Further, the check at issue actually provided a numerical amount of $25,000.00 in the box portion of the check. Although more careful scrutiny of the check reveals a different amount in the written portion of the check, one can see how this problem could go undetected when reviewing the various documents that resulted from this investigation and subsequent prosecution. Therefore, we cannot find that this error on the part of the prosecution, albeit careless, amounted to prosecutorial misconduct.
 {¶ 34} Even assuming arguendo that the prosecutor's conduct was improper, Edwards was not materially prejudiced so as to deny him a fair trial. While the prosecutor should have examined the check at issue to determine the correct amount, given the fact that Lang's initial summary indicated $2,500.00, that the other amounts listed were substantially less than $25,000.00, and the ease with which the correct amount could have been determined, his failure to check this and his decision to have Lang change the summary a few days before the trial did not result in an unfair trial. To the contrary, as previously noted, counsel for Edwards was able to expose this discrepancy to the jury through the State's own witness. In addition, the dollar amounts listed in the summary were cumulative evidence in a case wherein there was ample, independent evidence that Edwards committed these offenses. Thus, we find no plain error in the use of this summary, and the third assignment of error is overruled.
 {¶ 35} For these reasons, the judgment of the Common Pleas Court of Marion County, Ohio, is affirmed.
Judgment affirmed.
 Cupp and Bryant, JJ., concur.