OPINION
{¶ 1} Defendant-appellant Travis Lee ("Lee") appeals from the May 8, 2006 jury verdict and Journal Entry of Sentence of the Court of Common Pleas of Union County, Ohio, finding him guilty of two counts of Receiving Stolen Property in violation of Ohio Revised Code Section 2913.51, and guilty of one count of Engaging in a Pattern of Corrupt Activity in violation of Ohio Revised Code Section 2923.32(A)(1), (B)(1).
 {¶ 2} These charges stem from events occurring between October 30, 2005 and November 24, 2005. On October 30, 2005 Jason Hendrickson ("Hendrickson") stole a 2000 Honda Odyssey van ("Honda") from the driveway of Hans Schlecht in Marysville, Union County, Ohio. Hendrickson drove the Honda from Marysville to the west side of Columbus where he met up with Tommy Delaney. ("Delaney"). Hendrickson and Delaney proceeded to drive the Honda to the vicinity of Interstate 71 and Hudson Street in Columbus and leave the vehicle with Lee at his residence. Delaney received crack cocaine from Lee which he shared with Hendrickson. The Honda was later recovered at Lee's house located at 2417 Osceola and was subsequently returned to its owner.
 {¶ 3} Sometime during the night of November 21, 2005 through November 22, 2005 Hendrickson stole a 1999 Ford Contour ("Contour") from the residence of Krista Burhts in Marysville, Union County, Ohio. Hendrickson picked up Delaney and they drove the Contour to Lee's house in Columbus, but parked it a couple of houses down from Lee's residence. Delaney received crack cocaine from Lee which he shared with Hendrickson. Later, Hendrickson and Delaney drove the Contour back to Marysville with another man named Charles Craig ("Craig") and left the Contour in an apartment complex parking lot in Marysville. Sometime later Delaney and Craig took the Contour back to Columbus and left it at a retirement apartment complex near Lee's house in Columbus. The Contour was subsequently located by the Columbus police and returned to Krista Burhts.
 {¶ 4} On November 24, 2005 Hendrickson stole a 1999 Chevrolet Blazer ("Blazer") belonging to Tammy Whaley from the driveway of Charles Inman in Marysville, Union County, Ohio. Hendrickson picked up Delaney and Craig and drove to Lee's where Hendrickson parked the Blazer on the street in front of Lee's residence. Lee gave Delaney crack cocaine and Hendrickson, Delaney, and Craig subsequently returned to Marysville. The Blazer was never recovered.
 {¶ 5} On March 8, 2006 a Union County Grand Jury indicted Lee on three counts of Receiving Stolen Property (one for each of the three cars that were stolen from Marysville) in violation of Ohio Revised Code Section 2913.51, and one count of Engaging in a Pattern of Corrupt Activity in violation of Ohio Revised Code Section 2923.32(A)(1), (B)(1) for the violations of R.C. 2913.51.
 {¶ 6} Lee pled not guilty to all four charges and the matter proceeded to a one day jury trial on May 8, 2006. At the end of the State's case, Lee moved for a Criminal Rule 29 Motion for Acquittal on all counts as to venue. The court overruled Lee's motion and the matter proceeded to Lee's case in chief.
 {¶ 7} At the close of all the evidence, the jury found Lee guilty of Counts I and II, Receiving Stolen Property in violation of R.C. 2913.51, both felonies of the fourth degree, and guilty of Count IV, Engaging in a Pattern of Corrupt Activity in violation of R.C. 2923.32(A)(1), (B)(1), a felony of the second degree. The jury found Lee not guilty of Count III, Receiving Stolen Property.
 {¶ 8} This matter proceeded to a sentencing hearing. The court sentenced Lee to 18 months in prison on each of Counts I and II, to be served consecutively to one another, and sentenced Lee to eight years in prison on Count IV, to be served consecutively to Counts I and II. Lee was granted 60 days jail time credit.
 {¶ 9} Lee now appeals, asserting two assignments of error.
 ASSIGNMENT OF ERROR NO. 1 THE TRIAL COURT ERRED WHEN IT FAILED TO GRANT APPELLANT'SCRIMINAL RULE 29 MOTION OF AQUITTAL BASED UPON THE STATE'SFAILURE TO PROVE VENUE ON ALL OF THE CLAIMS.
 {¶ 10} In his first assignment of error, Lee contends that the trial court improperly overruled his Criminal R. 29 motion for acquittal because the prosecution failed to prove venue in Union County, Ohio.
 {¶ 11} Crim.R. 29(A) provides that a court must order the entry of a judgment of acquittal of a charged offense "if the evidence is insufficient to sustain a conviction of such offense[.]" However, "a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proven beyond a reasonable doubt."State v. Bridgeman (1978), 55 Ohio St.2d 261, 381 N.E.2d 184, syllabus. The Bridgeman standard must be viewed in light of the sufficiency of evidence test set forth in State v. Jenks
(1991), 61 Ohio St.3d 259, 574 N.E.2d 492 at paragraph two of the syllabus. State v. Edwards 3rd Dist. No. 9-03-63,2004-Ohio-4015. In Jenks, the Ohio Supreme Court held that "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." Jenks, supra.
 {¶ 12} The defendant may move the court for acquittal "after the evidence on either side is closed." Crim.R. 29(A). When a defendant moves for acquittal at the close of the state's evidence and that motion is denied, the defendant "waives any error which might have occurred in overruling the motion by proceeding to introduce evidence in his or her defense." Statev. Edwards, supra citing State v. Brown (1993),90 Ohio App.3d 674, 685, 630 N.E.2d 397. In order to preserve a sufficiency of the evidence challenge on appeal once a defendant elects to present evidence on his behalf, the defendant must renew his Crim.R. 29 motion at the close of all the evidence. Id. See also Helmick v. Republic-Franklin Ins. Co. (1998),39 Ohio St.3d 71, 529 N.E.2d 464, paragraph one of the syllabus; Statev. McElroy 3rd Dist. No. 2-2000-29, 2001-Ohio-2113.
 {¶ 13} Our review of the record reveals that Lee made his Crim.R. 29 motion at the close of the State's case-in-chief. The motion was denied by the trial court and Lee proceeded to present evidence in defense. However Lee failed to renew his Crim.R. 29 motion for acquittal at the conclusion of all of the evidence. Thus, Lee has waived all but plain error. State v. Flory 3rd Dist. No. 15-04-18, 2005-Ohio-2251 citing State v. Edwards,supra. For plain error to be found, the error must be a deviation from a legal rule that affected a substantial right of the defendant. State v. Barnes (2002), 94 Ohio St.3d 21, 27,759 N.E.2d 1240. Plain error is to be used "with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice". Id.
 {¶ 14} Although it is not a material element of an offense charged, venue is a fact which must be proved in criminal prosecutions unless it is waived by the defendant. State v.Draggo (1981), 65 Ohio St.2d 88, 90, 418 N.E.2d 1343. However, venue need not be proved in express terms so long as it is established by all the facts and circumstances in the case.State v. Headley (1983), 6 Ohio St.3d 475, 477, 453 N.E.2d 716;State v. Connell 6th Dist. No. H-03-026, 2005-Ohio-3202
 {¶ 15} R.C. 2901.12(A) provides that "[t]he trial of a criminal case in this state shall be held in a court having jurisdiction of the subject matter, and in the territory of which the offense or any element of the offense was committed." (Emphasis added). Additionally, R.C. 2901.12(C) provides as follows:
When the offense involved the unlawful taking or receiving ofproperty or the unlawful taking or enticing of another, theoffender may be tried in any jurisdiction from which or intowhich the property or victim was taken, received, or enticed.
Finally, "[w]hen an offender, as part of a course of criminal conduct, commits offenses in different jurisdictions, the offender may be tried for all of those offenses in any jurisdiction in which one of those offenses or any element of one of those offenses occurred." R.C. 2901.12(H). In determining what constitutes a course of criminal conduct, R.C. 2901.12(H) states as follows:
Any of the following is prima-facie evidence of a course ofcriminal conduct:
 . . . (2) The offenses were committed by the offender in theoffender's same employment, or capacity, or relationship toanother.
 (3) The offenses were committed as part of the sametransaction or chain of events, or in furtherance of the samepurpose or objective.
 (4) The offenses were committed in furtherance of the sameconspiracy.
 (5) The offenses involved the same or a similar modusoperandi.
 {¶ 16} In the present case, Lee was charged with three counts of receiving stolen property in violation or R.C. 2913.51, and one count of engaging in a pattern of corrupt activity for the violations of R.C. 2913.51. Pursuant to R.C. 2901.12, any of the offenses could be tried in Union County if any one of their elements was committed in Union County. Additionally, if these offenses were committed as part of a course of criminal conduct, all could be tried in any jurisdiction where any element of any of the offenses occurred. Therefore, in order to try Lee for the four offenses in Union County, the State had to demonstrate that these offenses were part of a course of criminal conduct and that at least one element of any one of these offenses occurred in Union County, Ohio. See State v. Edwards, supra.
 {¶ 17} The evidence presented at trial established that Delaney and Hendrickson received crack cocaine from Lee each time they brought a vehicle stolen from Union County to Lee's residence in Franklin County. The commission of these offenses was the basis for Count IV of the indictment: engaging in a pattern of corrupt activity, which requires two or more incidents of corrupt activity. See R.C. 2923.32; R.C. 2923.31(E). Therefore, these offenses were inextricably linked together.
 {¶ 18} In sum, venue was proper in Union County pursuant to R.C. 2901.12(A), (C) and (H). Accordingly, Lee could be tried for all four counts in any jurisdiction in which any element of one of the offenses occurred, which included Union County. Thus, we cannot find that the trial court committed error, plain or otherwise, in denying Lee's motion for acquittal. Therefore, Lee's first assignment of error is overruled.
 ASSIGNMENT OF ERROR NO. 2 THE JURY'S VERDICTS ON THE TWO RECEIVING STOLEN PROPERTYCOUNTS AND THE CORRUPT ACTIVITIES CHARGE WERE AGAINST THEMANIFEST WEIGHT OF THE EVIDENCE AND SHOULD BE REVERSED.
 {¶ 19} In his second assignment of error, Lee claims that the jury's verdict was against the weight of the evidence and should be reversed.
 {¶ 20} Our function when reviewing the weight of the evidence is to determine whether the greater amount of credible evidence supports the verdict. State v. Thompkins (1997),78 Ohio St.3d 380, 387, 678 N.E.2d 541. In reviewing whether the trial court judgment was against the weight of the evidence, the appellate court sits as a "thirteenth juror" and examines the conflicting testimony. Id. In doing so, this court must review the entire record, weigh the evidence and all of the reasonable inferences, consider the credibility of witnesses, and determine whether in resolving conflicts in the evidence, the factfinder "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." Statev. Andrews 3d Dist. No. 1-05-70, 2006-Ohio-3764, citing Statev. Martin (1983) 20 Ohio App.3d 172, 175, 485 N.E.2d 717;Thompkins, 78 Ohio St.3d at 387, 678 N.E.2d 541.
 {¶ 21} In making this determination, the Ohio Supreme Court has outlined eight factors for consideration, which include "whether the evidence was uncontradicted, whether a witness was impeached, what was not proved, that the reviewing court is not required to accept the incredible as true, the certainty of the evidence, the reliability of the evidence, whether a witness' testimony is self-serving, and whether the evidence is vague, uncertain, conflicting, or fragmentary." State v. Apanovitch
(1987), 33 Ohio St.3d 19, 23-24, 514 N.E.2d 394, citing State v.Mattison (1985), 23 Ohio App.3d 10, 490 N.E.2d 926, syllabus. Ultimately, however, "[t]he discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." Martin,20 Ohio App.3d at 175, 485 N.E.2d 717.
 {¶ 22} In order to convict Lee of receiving stolen property in the present case, the State was required to show, beyond a reasonable doubt that Lee received, retained, or disposed of property of another, knowing or having reasonable cause to believe that the property had been obtained through commission of a theft offense, and that the property involved was a motor vehicle as defined in section 4501.01 of the Revised Code. See R.C. 2913.51.
 {¶ 23} To convict Lee of engaging in a pattern of corrupt activity, the State was required to show, beyond a reasonable doubt that Lee, in a continuing course of events, did conduct or participate in, directly or indirectly, the affairs of the enterprise through a pattern of corrupt activity; to-wit: violations of R.C. 2913.51, in a total amount exceeding $500.00.
 {¶ 24} At trial, the State called Jason Hendrickson as a witness. At the time of his testimony, Hendrickson was serving a jail sentence for receiving stolen property, theft, and failure to pay child support. (Tr. p. 53). Hendrickson testified that he had been subpoenaed to testify and that he had agreed as part of a plea agreement to testify truthfully in the case against Lee. (Tr. p. 54, 66).
 {¶ 25} Hendrickson testified that after stealing the Honda in Marysville he met Thomas Delaney and they immediately drove to Lee's house in Columbus where Delaney traded the Honda to Lee for crack cocaine. (Tr. pp. 55-56). Hendrickson testified that they parked the Honda on the road a couple of houses down from Lee's. (Tr. p. 59). Hendrickson testified that after stealing the Contour in Marysville, he picked up Delaney and within an hour they were at Lee's house where Hendrickson parked the Contour a couple of houses down from Lee's and believed Delaney initiated a trade for crack cocaine. (Tr. pp. 57-59).
 {¶ 26} Hendrickson also testified that after stealing the Blazer in Marysville he picked up Delaney and Charles Craig and they went to Lee's house where they parked the Blazer out front. (Tr. pp. 60-62). Hendrickson believes Delaney traded the Blazer to Lee for crack cocaine because Delaney gave him crack. (Tr. p. 62). Finally, Hendrickson testified that on all three occasions Delaney initiated the deals with Lee, and that Delaney would go into Lee's house and come back out with crack, and on all three occasions he received crack cocaine. (Tr. p. 63-64). Hendrickson also testified that he spoke briefly with Lee when they went to Lee's with the Blazer and that the crack cocaine was on the coffee table. (Tr. p. 64).
 {¶ 27} The State also called Delaney as a witness. At the time of his testimony, Delaney was serving a jail sentence for three charges of receiving stolen property and one charge of trafficking in marijuana. (Tr. p. 69). Delaney testified that as part of his plea agreement on those charges he would receive a four year sentence in exchange for testifying truthfully against Lee. (Tr. p. 70).
 {¶ 28} Delaney testified that Hendrickson asked him if he could sell the Honda for some crack and that he helped Hendrickson "get rid of it" by taking the vehicle to Lee's house. (Tr. p. 72). Delaney testified that they parked the Honda on the street near Lee's house and that they exchanged the Honda with Lee for crack. (Tr. p. 73). Delaney also testified that Hendrickson stole the Contour and they drove Lee's house in Columbus where Delaney tried to trade the car for some dope. (Tr. p. 75). Delaney testified that Lee didn't want the Contour but Delaney still got dope from Lee and stated that they left the Contour on the street two blocks from Lee's house. (Tr. pp. 75-76). Finally, Delaney testified that after Hendrickson stole the Blazer he, Hendrickson and Craig drove to Lee's house where they parked the Blazer down the block. (Tr. p. 77). Delaney stated that he received crack from Lee in exchange for the Blazer. (Tr. p. 78). Delaney testified that after this deal he got the keys for the Contour from Lee and that he, Hendrickson and Craig drove back to Marysville. (Tr. p. 78-79).
 {¶ 29} Finally, the State called Craig as a witness. At the time of his testimony Craig was serving a jail sentence for a receiving stolen property charge unrelated to the present case. Craig testified that he went with Hendrickson and Delaney to Columbus in the Blazer to trade the Blazer to Lee. (Tr. p. 100). Craig testified that the Blazer was parked on Lee's street, about three or four houses down from Lee's house. (Tr. p. 102). Craig also testified that he had moved vehicles for Lee in the past because Lee didn't want them in front of his house because they were stolen. (Tr. p. 103).
 {¶ 30} Lee testified on his own behalf and admitted that he knew Hendrickson, Delaney and Craig. In contrast to the evidence presented by the State, Lee testified that he did receive the Honda from Hendrickson and Delaney, but testified that Hendrickson simply offered it to him as a vehicle to use for a couple of days as Hendrickson had borrowed it from one of his neighbors. (Tr. pp. 116-117). Lee denied trading crack cocaine to Hendrickson and Delaney in exchange for the Honda and testified that although Hendrickson and Delaney "actually got some dope, that was not the deal," because "I actually gave them cash to rent the vehicle." (Tr. p. 129). Additionally, Lee acknowledged that the Honda was parked behind his house in the backyard when the Columbus Police Department located the vehicle. (Tr. p. 127).
 {¶ 31} Lee also testified that Delaney and Hendrickson tried to bring him a Contour but that he "didn't want to be bothered with any more vehicles after . . . police had showed up and told me that the van that they supposedly rented me . . . was stolen." (Tr. pp. 118-119). However, Lee acknowledged that at the time the Contour was delivered, Delaney and Hendrickson came into his house and used crack cocaine. (Tr. p. 119). Lee also testified that he never received any keys for a Contour. (Tr. p. 129). Finally, Lee testified that Hendrickson and Delaney came to his house again in a Blazer they wanted to trade to him, but that he did not make a trade for the Blazer (Tr. p. 119).
 {¶ 32} The credibility of witnesses, including experts, is for the jury to decide. State v. DeHass (1967),10 Ohio St.2d 230, 227 N.E.2d 212, paragraph one of the syllabus. Credibility is always an issue, whether impeached or not, and it is for the fact finder to impartially if a witness is credible and the amount of weight to be afforded to that particular witness' testimony. State v. Bayer (1995), 102 Ohio App.3d 172, 182,656 N.E.2d 1314. The jury may believe or disbelieve any witness.State v. Viola (1947), 51 Ohio Law Abs. 577, 82 N.E.2d 306.
 {¶ 33} Our review of the record reveals that between October 30, 2005 and November 22, 2005 Lee received at least two vehicles each worth over $500.00 and that on more than one occasion, Hendrickson and Delaney smoked crack cocaine given to them by Lee after driving to Columbus in the stolen vehicles. Furthermore, one of the stolen vehicles was recovered by the police from Lee's backyard, making it clear that Lee received, retained or disposed of at least one of the stolen vehicles. We also find that the jury could consider all of these transactions presented during trial to determine whether or not these stolen vehicles were exchanged for cash or crack cocaine.
 {¶ 34} Additionally, we find that the substantial testimony presented during trial, coupled with the fact that the jury did not convict Lee on the third count of receiving stolen property as it related to the Chevrolet Blazer that was never recovered, make it highly probable that the jury carefully assessed the credibility of each witness and properly weighed and considered all of the testimony and evidence presented before rendering their verdict. Therefore, we cannot find that the jury's verdict was against the manifest weight of the evidence.
 {¶ 35} Accordingly, Lee's second assignment of error is overruled and the judgment and sentence of the trial court is affirmed.
Judgment affirmed.
 Bryant, P.J., and Rogers, J., concur.