OPINION *Page 2 
{¶ 1} Defendant-Appellant, Gary A. Stemm, appeals the judgment of the Union County Court of Common Pleas convicting him of abduction and rape and sentencing him to an aggregate prison term of fifteen years to life. On appeal, Stemm argues that the trial court erred when it overruled his motion for acquittal because the State failed to prove venue. Based upon the following, we affirm the judgment of the trial court.
 {¶ 2} In June 2008, the Union County Grand Jury indicted Stemm on one count of kidnapping in violation of R.C. 2905.01(A)(4), (C)(1), a felony of the first degree; two counts of rape in violation of R.C. 2907.02(A)(2), felonies of the first degree; and, one count of abduction in violation of R.C. 2905.02(A)(2), (B), a felony of the third degree. Subsequently, Stemm entered a plea of not guilty to all counts in the indictment.
 {¶ 3} In September 2008, the case proceeded to trial, at which the following testimony was heard.
 {¶ 4} D.K., the alleged victim, testified that, on May 10, 2007, she went to a party at the Stockyard Steakhouse with her friends Jessica Brown and David Reinhardt; that she consumed two or three beers at the Stockyard; that, around 11:00 p.m., the group went to Stephen's Lounge in Marysville, where she sat at the bar and drank several more beers; that she began feeling dizzy and strange; *Page 3 
that her friends left, but she continued to socialize at the bar; that a man began talking to her and she remembered nothing after that point; that she did not remember leaving the bar; that the next thing she remembered was standing in a strange living room with a strange man whom she had never met before; that the man was tall, skinny, and had a beard; that the man told her to take her clothes off and, when she refused, he forcibly removed her clothing; that he held her down on the couch; that he vaginally raped her and she could not remember if he orally raped her; that she screamed, but the man hit her repeatedly in the face, causing her eye to become bruised and swollen; that she sustained bruises to her arms and legs, and a bite mark to her neck; that, after the attack, the man decided to take her home, and she gave him her ex-boyfriend's address because she was afraid that if she told him where she lived, he would come back and find her; that, when they parked at her ex-boyfriend's house, the man demanded that she perform fellatio on him; that she refused and ran from the car to the porch, where she slept because no one answered the door; that, around 6:30 or 7:00 a.m., she awoke and walked several miles to her house; that she then went to Memorial Hospital; and, that she never consented to sexual activity with the stranger. D.K. then identified Stemm as her assailant.
 {¶ 5} Patrolman Kelly Eirich of the Marysville Police Department testified that, on May 11, 2007, he was dispatched to an alleged sexual assault at the *Page 4 
Union County Memorial Hospital; that the alleged victim, D.K., was very upset, crying, tearful, and had difficulty speaking to him; that D.K. had bruising that looked like someone had beaten her face, neck, upper shoulders, and arms; that she informed him that an unknown male subject drove her to his house where he beat and raped her; that D.K. recalled that the offenses took place somewhere approximately a twenty to thirty minute drive from Stephen's Lounge; and, that, on the return trip to her ex-boyfriend's house in Marysville, she recalled seeing a road sign that possibly read "State Route 31" and/or "Mechanicsburg."
 {¶ 6} David Reinhardt testified that, on May 10, 2007, D.K. and her friend, Jessica Brown, accompanied him to a party sponsored by a radio station at the Stockyard Steakhouse; that he did not observe any bruising on D.K. at that time; that the group left the Stockyard around 9:30 or 10:00 p.m. and proceeded to Stephen's Lounge; that around 11:30 p.m. or midnight, he and Brown left Stephen's Lounge without D.K.; and, that D.K. had drank "quite a bit" and was "obviously inebriated" at the time they left. (Trial Tr., p. 98).
 {¶ 7} Darren Fry testified that he was a bartender at Stephen's Lounge; that, on the evening of May 10, 2007, or the early morning of May 11, D.K. was at the bar with Reinhardt and another woman; that he did not notice any bruising on D.K.; that Stemm was also at the bar; that he served D.K. approximately two beers and then "cut her off because she appeared to be intoxicated; that, after her *Page 5 
friends departed, D.K. sat at the bar and men began approaching her and "trying to hit on her" (Id. at 110), but she brushed them off; that Stemm kept coming back despite the "brushoffs" and sat beside her at the bar; and, that he did not see Stemm and D.K. leave together, but noticed they were both gone around the same time, approximately 12:00 to 1:30 a.m.
 {¶ 8} Detective Chad Seeberg of the Marysville Police Department testified that he investigated the incident; that he prepared a photo lineup and Fry immediately selected Stemm's photograph as the man who had been at Stephen's Lounge talking to D.K.; that he conducted a non-custodial interview with Stemm and collected DNA samples from him with his consent; that Stemm stated his address was 26468 State Route 31, Raymond, Ohio; that Stemm stated that he was a cook at the Stockyard Steakhouse and worked from 2:00 until 10:00 p.m. on the night of the radio station-sponsored party at the Stockyard; that he stated that he left work and went straight home, stopping only to purchase cigarettes; that Stemm stated that his wife was out of town; that Stemm denied being at Stephen's Lounge that evening; that he showed Stemm a photograph of D.K., and he denied knowing who she was or ever having contact with her; that Stemm told him he lived approximately ten to twelve miles from downtown Marysville, which was a twenty to twenty-five minute trip; and, that Stemm told him he had heard that there was someone "running around town" who looked like him. *Page 6 
 {¶ 9} Detective Seeberg continued that he interviewed D.K., who informed him that "she thought she was getting a ride home and that she ended up in the living room of [her assailant's] house where she was beaten and sexually assaulted" (Id. at 149); that D.K. stated that the return trip to Marysville after the assault was approximately twenty minutes and that she saw a road sign that said "31" or "Mechanicsburg"; that D.K. related that she asked her assailant to drop her off at her ex-boyfriend's house after the assault because she was afraid to tell him where she lived; that no one answered when she knocked on the door, so she fell asleep on the porch, where she awoke the next morning and walked to her home; that D.K. described her assailant as a white male with dark hair, a "scrawny" build, and hair around his mouth; and, that her description was consistent with Stemm's appearance.
 {¶ 10} Tracey Cox, a nurse at Memorial Hospital, testified that she examined D.K. on May 11, 2007; that D.K. told her she had been raped around 2:00 a.m.; that she was nervous, very tearful, and hyperventilating; that she wrote down D.K.'s statement that "I left Stephen's Bar last night with a guy. I thought he was going to take me home. He beat me, he raped me. I thought I was going to die. I don't know where we went. I saw a Route 31 sign. He brought me to my ex-boyfriend's this morning, then I walked two miles home" (Id. at 38); that she had a black eye, circular bruise on her upper arm, and several bruises on her neck, *Page 7 
legs, back, and both arms; that D.K. indicated she did not know her attacker; and, that she stated that he raped her vaginally and orally.
 {¶ 11} Dr. Brian Seifferth, an emergency physician at Memorial Hospital, testified that he examined D.K. on May 11, 2007; that she told him she had been raped orally and vaginally by an unknown assailant; that she had many bruises including a contusion to her left eye and multiple contusions to her neck; that her bicep exhibited a large contusion that appeared to be a "grabbing injury"; and, that she had a minor abrasion in her vaginal area.
 {¶ 12} Rebecca Dillon, a sexual assault nurse examiner at Memorial Hospital, testified that she examined D.K. on May 11, 2007, and completed a rape kit; that she had bruises on her eye, neck, elbow, both arms, shoulder, legs, and back; that she had a pencil-eraser-sized abrasion in her vaginal area; that she said she had been raped; and, that the vaginal abrasion was possible, but unlikely, with normal sexual intercourse, but more consistent with forcible sex.
 {¶ 13} Kristen Sleeper, a forensic scientist at the Bureau of Criminal Identification and Investigation, testified that she examined the rape kit from the incident and identified the presence of spermatozoa on D.K.'s underwear.
 {¶ 14} Tabitha Bullock, a DNA analyst at Orchid Cellmark, testified that she analyzed evidence from the rape kit including vaginal swabs, underwear and skin stain swabs from the bruises; that the samples were consistent with DNA *Page 8 
from both D.K. and Stemm; and, that the frequency of the occurrence of that DNA profile from the skin stain swabs, sperm fraction of the vaginal swab, and the sperm fraction in the underwear was one in 437 quadrillion individuals in the United States population.
 {¶ 15} At the close of the State's case, Stemm moved for acquittal on each of the counts on the basis that evidence was only presented as to one count of rape, and that he did not believe sufficient evidence had been presented on the remaining counts. The trial court sustained the motion for acquittal on one of the rape counts, and overruled the motion as to the other counts. Concurrently, the following discussion took place from the bench:
 THE COURT: Is that the only — is that the only basis for your Rule 29?
 [STEMM'S COUNSEL]: Yes.
 * * *
 THE COURT: Okay. The Court, then, will sustain the motion on [one rape count], and I will overrule the motion for Rule 29 on [the remaining counts]. * * * but I want everybody to understand, I may very well be wrong about this, but as far as [both rape counts], because there's not been the first shred of testimony with regard to venue, other than * * * the detective testified 2600 and whatever it was, State Route 31, Raymond, Ohio. Did not testify anything about Union County. * * * Would not apply to [the kidnapping and abduction counts] because there you had testimony that that was right here in Union County — right here in Marysville. * * * that calls for me to speculate as to whether [the rape counts were] within Union County or not, as well as — and certainly I don't think that I'm about to take the position to take judicial notice of [Stemm's address] being within Union County[.] *Page 9 
(Id. at 235-238).
 {¶ 16} Subsequently, the State rested. Stemm presented no evidence.
 {¶ 17} Thereafter, the jury returned a verdict of guilty as to the remaining rape count and the abduction count, and a verdict of not guilty as to the kidnapping count. Additionally, the jury found that Stemm was a sexually violent predator after considering his prior conviction for sexual imposition. The trial court sentenced Stemm to a three-year prison term on the abduction conviction, to be served consecutively to a prison term of ten years to life on the rape conviction.
 {¶ 18} It is from this judgment that Stemm appeals, presenting the following assignment of error for our review.
 THE TRIAL COURT ERRED WHEN IT OVERRULED APPELLANT'S MOTION FOR ACQUITTAL BASED ON THE STATE'S FAILURE TO PROVE VENUE.
 {¶ 19} In his sole assignment of error, Stemm argues that the trial court should have sustained his Crim. R. 29 motion for acquittal on all counts because the State failed to prove venue. Specifically, Stemm argues that the State alleged the rape offenses and abduction transpired at 26468 State Route 31, in Raymond, Ohio, but that the State failed to demonstrate that this address was located in *Page 10 
Union County; and, that the State failed to show where the abduction and rape offenses occurred.[1]
 {¶ 20} Initially, we note that the State argues Stemm has waived this issue because he failed to designate venue as part of the basis for his Rule 29 motion for acquittal. Conversely, Stemm contends that the issue was not waived because the trial court raised the issue. However, based upon the following, we find that the trial court's overruling of the motion was not error, making the issue of waiver moot.
 {¶ 21} Crim. R. 29(A) provides that a court must order the entry of a judgment of acquittal of a charged offense "if the evidence is insufficient to sustain a conviction of such offense[.]" However, "a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt." State v. Bridgeman (1978), 55 Ohio St.2d 261, syllabus. The Bridgeman standard must be viewed in light of the sufficiency of evidence test set forth in State v. Jenks (1991),61 Ohio St.3d 259, at paragraph two of the syllabus, superseded by state constitutional amendment on other grounds in State v. Smith (1997),80 Ohio St.3d 89. State v. Edwards, 3d Dist. *Page 11 
No. 9-03-63, 2004-Ohio-4015. In Jenks, the Supreme Court of Ohio held that "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." 61 Ohio St.3d at paragraph two of the syllabus.
 {¶ 22} Venue is not a material element of an offense charged; however, it must be proved in criminal prosecutions unless it is waived by the defendant. State v. Draggo (1981), 65 Ohio St.2d 88, 90. Additionally, venue need not be proved in express terms so long as it is established by all the facts and circumstances in the case. State v. Lee, 3d Dist. No. 14-06-18, 2006-Ohio-6091, ¶ 14, citing State v. Headley (1983),6 Ohio St.3d 475, 477; State v. Connell, 6th Dist. No. H-03-026,2005-Ohio-3202, ¶ 14.
 {¶ 23} Article I, Section 10 of the Ohio Constitution guarantees criminal defendants the right to "a speedy public trial by an impartial jury of the county in which the offense is alleged to have been committed[.]" Additionally, R.C. 2901.12 governs venue and provides, in pertinent part:
 (A) The trial of a criminal case in this state shall be held in a court having jurisdiction of the subject matter, and in the territory of which the offense or any element of the offense was committed.
 * * * *Page 12 
 (G) When it appears beyond a reasonable doubt that an offense or any element of an offense was committed in any of two or more jurisdictions, but it cannot reasonably be determined in which jurisdiction the offense or element was committed, the offender may be tried in any of those jurisdictions.
 {¶ 24} The Twelfth Appellate District discussed the applicability of R.C. 2901.12(G) in State v. Miller (1989), 63 Ohio App.3d 479, where a defendant and a victim took a fishing trip that originated in Warren County. After traveling an undetermined distance down the river, the defendant and victim went ashore where the victim alleged the offenses took place. However, the evidence was unclear as to whether the point where they went ashore was in Warren County or a neighboring county. The appellate court found that R.C. 2901.12(G) established venue in Warren County in this situation, explaining that this code
section applies to those situations where the entire offense was committed in a single county but it cannot reasonably be determined in which county the offense was committed. In such cases, where it cannot be determined in which of the counties a felony was committed, although there is proof beyond a reasonable doubt that the offense occurred in one of the counties, the statute permits the crime to be prosecuted in any of the counties.
 It is obvious that the crime occurred somewhere along the banks of the Little Miami River. It is uncertain whether the incident occurred in Warren County or a neighboring county through which the Little Miami River runs. Such a situation is clearly covered by R.C. 2901.12(G) and the trial court did not err in refusing to grant appellant's motion for a judgment of acquittal on the issue of venue. *Page 13 
(Internal citations omitted) Miller, 63 Ohio App.3d at 485. See, also,State v. Palmer, 9th Dist. No. Civ.A. 2323-M, 1995 WL 48442 (finding venue appropriate in Medina County where a child victim could not recall if offenses occurred at her family's residence in Cuyahoga County or their subsequent residence in Medina County due to her young age), andState v. Christman, 7th Dist. No. 786, 1999 WL 343411 (finding venue appropriate in Monroe County where murder victim, whose body was never found, was last seen by defendant and reported missing in Belmont County, but defendant made statements to several witnesses that places in Monroe County would be good for hiding a body or that he buried the victim at those places).
 {¶ 25} Here, we find that the facts before us are analogous to the situations presented in Miller, Palmer, and Christman, supra. Although evidence was presented that D.K. and Stemm were seen together at Stephen's Lounge in Marysville, Union County, D.K. testified that she did not remember leaving the bar or the trip to the location where Stemm assaulted her. D.K. could only testify that she remembered ending up in a strange living room with Stemm, and Detective Seeberg testified that D.K. informed him that the return trip from that location to her ex-boyfriend's house in Marysville, Union County, was approximately twenty minutes. Therefore, although the episode began and ended in Union County, it was uncertain whether the location where the offenses took *Page 14 
place was in Union County or one of the several adjacent counties twenty or twenty-five minutes from Marysville. Despite this uncertainty, we find that proof existed beyond a reasonable doubt that the offenses occurred in Union County or one of the adjacent counties, establishing jurisdiction in Union County pursuant to R.C. 2901.12(G).
 {¶ 26} Accordingly, we overrule Stemm's assignment of error.
 {¶ 27} Having found no error prejudicial to the appellant herein, in the particulars assigned and argued, we affirm the judgment of the trial court.
Judgment Affirmed
 PRESTON, P.J. and SHAW, J., concur.
[1] We note that the issue of venue may have easily been resolved had law enforcement made the effort to obtain photographs of Stemm's residence in order to corroborate D.K.'s description of the living room, or to obtain physical evidence from the residence to corroborate her version of events. *Page 1